James Grover HOLTZ, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C2–83–1181.

Court of Appeals of Minnesota.

Dec. 7, 1983.

Edward M. Cohen & Associates, David L. Olson, St. Louis Park, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by PARKER, P.J., and WOZNIAK, and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

This is an appeal from an order of the Hennepin County Municipal Court sustaining the revocation of appellant's driver's license for refusing to submit to chemical testing under Minn.Stat. § 169.123, (1982), the implied consent law. Appellant raises two issues: whether reasonable and probable grounds existed to invoke the implied consent law and whether appellant was properly advised of his rights and obligations under the implied consent statute.[1]

At approximately 1:00 a.m. on April 20, 1982, Orono police officers determined by radar that a vehicle had been speeding. The officers, using their emergency red lights, pursued the vehicle two blocks into a cafe parking lot. After pulling into the parking lot, the driver began walking quickly away. The officer recognized the driver as James G. Holtz, the operator of a local business. Holtz was ordered to stop. Holtz continued walking; to stop him the officer had to run and grab Holtz's arm. The officer smelled the strong odor of alcohol on Holtz's breath and noticed that Holtz's eyes were bloodshot. The officer then directed Holtz back to the squad car where he observed that Holtz's speech was slurred and his eyes were watery. From these observations and from Holtz's uncharacteristic belligerent attitude, the officer believed Holtz was under the influence. Upon Holtz's refusal to take a preliminary breath test, the officer read Holtz the implied consent advisory.[2] The officer did not read the entire implied consent advisory form; he stopped reading after Holtz remained silent in response to the question of

---

1. Appellant concedes that there was a refusal to submit to chemical testing and does not raise this issue on appeal.

2. In addition to prefatory language requiring a sample of blood or breath, the implied consent advisory contained the following statements:

   If you refuse to provide the test sample, your right to drive will be revoked for six months. If you refuse to answer or make a decision, it will be considered a refusal to take the test.

   If you provide the test sample, and if the results indicate that you are under the influence of alcohol or a controlled substance, you will be subject to criminal penalties, and your right to drive may be revoked for 90 days.

   If you provide the test sample, you have the right to have additional tests made by a person of your choice. Any additional test must be at your own expense. It must be taken while still in custody. You will be permitted to contact any person you choose to arrange for any additional test.

   You have the right to consult with an attorney. If you wish to do so, a telephone will be made available to you. If you are unable to contact an attorney, you must make the decision on your own. You must make your decision within a reasonable time.

whether Holtz understood what had just been explained to him.[3]

Following an implied consent hearing on July 6, 1983, the Hennepin County Municipal Court on July 12, 1983, sustained the Commissioner of Public Safety's order to revoke Holtz's driving privileges for six months.

1. Under our implied consent law, every driver may be required to provide a preliminary breath test when an officer has reason to believe, from the manner in which a person is driving, operating, controlling, or acting upon departure from a vehicle, that the driver is under the influence. Minn. Stat. § 169.121, subd. 6 (1982). Following a refusal to take this preliminary breath test, a driver may be required to provide a chemical sample of blood, breath or urine if the officer has reasonable and probable grounds to believe the person was driving under the influence. Minn.Stat. § 169.123, subd. 2(a).

■ As a matter of public policy, D.W.I. laws are to be liberally construed in the public's favor. *Minnesota Department of Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1983). Many telltale signs of intoxication exist independently or in combination with others. All signs need not be exhibited in every case. In fact, an officer need only have one objective indication of intoxication to constitute reasonable and probable grounds to believe a person is under the influence. *State v. Hicks,* 301 Minn. 350, 222 N.W.2d 345 (1974). See also *State v. Schneider,* 311 Minn. 566, 249 N.W.2d 720 (1977).

■ In the instant case, there are overwhelming circumstances to support the trial court's conclusion that the officer had reasonable and probable grounds to believe Holtz had been driving under the influence. The officer observed Holtz's bloodshot and watery eyes, slurred speech, odor of alcohol on the breath and uncooperative attitude.

■ Contrary to Holtz's assertion, roadside sobriety tests are not required to support an officer's reasonable belief that a driver is intoxicated. The record clearly indicates that the officer had reasonable and probable grounds to believe Holtz was intoxicated. The trial court did not err in making this determination. *State Department of Highways v. Beckey,* 291 Minn. 483, 192 N.W.2d 441 (1971).

■ 2. The other issue raised by Holtz is whether the officer properly advised Holtz of his rights under the implied consent law. This contention is without merit. The only advisory that police are required to give a person under the implied consent law is that mandated by statute. *State v. Gross,* 335 N.W.2d 509 (Minn.1983); *State v. Abe,* 289 N.W.2d 158 (Minn.1980).

■ There is no question that the officer gave Holtz the necessary information required by Minn.Stat. § 169.123, subd. 2(b).[4] Ample support exists in the record to show that Holtz was properly advised of his rights even though the officer failed to read the entire implied consent advisory form. The questions that were not asked were duplicative of the statutorily mandated rights which were read to Holtz. While the

---

3. The following questions from the implied consent advisory form were not read to Holtz:
   Do you wish to consult with an attorney?
   Will you give a sample of your blood?
   Will you give a sample of your (breath) (urine)?
   Are you refusing with the understanding that you may lose your driving privileges for six months?
   What is your reason for refusing?

4. This statute provides that when a chemical test is requested, the person shall be informed:
   (1) that if testing is refused, the person's right to drive will be revoked for a period of six months; and

(2) that if a test is taken and the results indicate that the person is under the influence of alcohol or a controlled substance, the person will be subject to criminal penalties and the person's right to drive may be revoked for a period of 90 days; and

(3) that the person has a right to consult with an attorney but that this right is limited to the extent that it cannot unreasonably delay administration of the test or the person will be deemed to have refused the test; and

(4) that after submitting to testing, the person has the right to have additional tests made by a person of his own choosing.

preferred practice would be to read the form in its entirety, failure to do so in this case did not violate appellant's statutory rights.

Affirmed.