Janice Ann **RUDE**, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Appellant.

No. C2–83–1505.

Court of Appeals of Minnesota.

April 17, 1984.

Terence L. Maus, O'Brien, Ehrick, Wolf, Deaner & Downing, Rochester, for respondent.

Linda F. Close, David L. Valentini, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and PARKER and LANSING, JJ.

## OPINION

PARKER, Judge.

This is an appeal from an order rescinding the Commissioner's revocation of respondent's driver's license pursuant to Minn.Stat. § 169.123, subd. (4) (1982). Following an accident, a certified peace officer asked respondent for a blood sample for chemical testing because the officer believed that respondent may have been driving while intoxicated. After conferring with her brother, respondent refused to take the test. The Commissioner of Public Safety revoked respondent's driver's license for her refusal.

At respondent's request, an implied consent hearing was held and the trial court rescinded the Commissioner's revocation of respondent's driving privileges because (1) the peace officer did not have probable cause to believe that respondent had been operating her car while under the influence of alcohol at the time of the accident, and (2) respondent was incapable of giving an informed consent or refusal to the demand for chemical testing. Appellant Commissioner claims that the above conclusions are contrary to law and the trial court's order is, therefore, clearly erroneous. We agree and reverse the trial court.

## ISSUES

1. Did the peace officer have reasonable and probable grounds to believe that respondent had been driving while under the influence of alcohol?

2. Does the statute require a knowing and voluntary refusal of chemical testing for a valid revocation of license?

## FACTS

Respondent Janice Ann Rude was involved in a serious accident involving her car and a semi-tractor trailer on Highway 52 in Goodhue County. Trooper Dale Sweazey of the Minnesota Highway Patrol and Detective Bert Robertson of the Goodhue County Sheriff's office were called to the scene of the accident. Trooper Sweazey, who arrived first, observed Rude lying in the roadway about 30 feet from her car. She appeared to be unconscious at that time. Sweazey did not talk with Rude. However, when within two feet of Rude's face, Sweazey detected the smell of an alcoholic beverage coming from her and relayed that information to Detective Robertson.

Trooper Sweazey also spoke with the truck driver about the accident. The driver stated that Rude's car did not stop for a stop sign and that the truck driver flashed his lights, sounded his horn and went to the left trying to avoid the collision. The record reveals that Detective Robertson

also spoke with the truck driver, but it does not reveal what the truck driver said to him.

When Detective Robertson first arrived at the accident, he observed the ambulance as it left the scene. Sweazey and Robertson then went to Rude's car and found a drinking glass which had tipped over on the floor near the driver's seat. On the floor, there was liquid which had spilled from the glass and ice cubes. The glass had an odor of alcohol in it. Detective Robertson spoke with Rude in the emergency room of the hospital. He smelled the odor of an alcoholic beverage coming from her mouth when he was six or seven inches away from her face. He then asked her if she would consent to a blood test. She did not answer. At that point, she and her brother had a whispered conversation. The detective asked her again if she would submit to a blood test. She refused at that time by saying "no." Respondent's brother also answered "no" to the detective's request.

The implied consent advisory was then read to Rude. Robertson testified that she appeared to be attentive when the advisory was read. During the procedure, the detective asked her if she understood what had just been read to her and she repeatedly stated, "I want to go home." At no time did she ever express any confusion about the reading of the advisory. However, Rude did not give a yes or no answer when asked if she understood the advisory.

Detective Robertson then asked, "Do you want to call an attorney?" Again, he received no answer, despite repeating the question two or three times. Next, Rude was asked if she would give a test. A blood test had already been offered. Rude again stated, "no." Her brother also again stated, "no." Detective Robertson then again explained to Rude what would happen to her driving privileges, and asked her what her reason was for not submitting to a test. She stated only that she wanted "to go home."

At the hearing, Detective Robertson testified that Rude appeared to be oriented when he was in her presence. Dr. Walters,

the attending physician, testified that while respondent was in the emergency room she was conscious, but she was confused and disoriented because of the trauma. Over appellant's objection, Dr. Walters was allowed to express an opinion that Rude was unable to comprehend and answer the questions presented to her.

The trial court issued an order rescinding the Commissioner's revocation of Rude's driving privileges. Subsequently, the trial court issued an amended order detailing findings of fact and conclusions. The Commissioner appeals both orders.

## DISCUSSION

### I

■ The implied consent law requires that every driver provide a preliminary breath test when an officer has reason to believe, from the manner in which a person is driving, operating, controlling, or acting upon departure from a vehicle, that the driver is under the influence of alcohol. Minn.Stat. § 169.121, subd. 6 (1982). Following a refusal to take this preliminary breath test, a driver may be required to provide a chemical test of his blood, breath or urine *"when an officer has reasonable and probable grounds to believe the person was driving, operating, or in physical control of a motor vehicle"* while under the influence. Minn.Stat. § 169.123, subd. 2(a) (emphasis added).

In *Holtz v. Commissioner of Public Safety,* 340 N.W.2d 363 (Minn.Ct.App. 1983), this court said:

As a matter of public policy, D.W.I. laws are to be liberally construed in the public's favor. *Minnesota Department of Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1981). Many telltale signs of intoxication exist independently or in combination with others. All signs need not be exhibited in every case. *In fact, an officer need only have one objective indication of intoxication to constitute reasonable and probable grounds to believe a person is under the influence. State v. Hicks,* 301 Minn.

350, 222 N.W.2d 345 (1974). See also *State v. Schneider*, 311 Minn. 566, 249 N.W.2d 720 (1977).

*Id.* at 365 (emphasis added).

In this case, the Commissioner contends that Detective Robertson had three objective indications that Rude was under the influence: (1) Robertson smelled alcohol on respondent's breath; (2) he found ice cubes and a spilled drink that smelled of alcohol on the floor by the driver's seat of respondent's car; and (3) he observed the seriousness of the accident at the accident scene.

Respondent contends that under *Holtz* these are not objective indications of intoxication, but rather are "indications of consumption of alcohol." The innovative distinction thus urged contradicts the intended purpose of the implied consent statute, i.e. to promote public safety on the highway and aid the proper enforcement of our D.W.I. statute. *State, Dept. of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981).

■ In light of our decision in *Holtz* and the cases cited therein, the basis for probable cause in this case is sufficient. Detective Robertson had such a combination of objective indications of intoxication—the smell of alcohol on the driver's breath, the spilled glass which smelled of alcohol in her car, and a serious accident—that to fail to require a test would be unthinkable.

## II

■ A person may refuse to submit to the chemical test of blood, breath or urine; however, such refusal automatically results in license revocation for six months. Minn. Stat. § 169.123, subd. 4 (1982). The statute does not define what constitutes a "refusal."

The statute also provides that "[i]t shall be an affirmative defense for the petitioner to prove that, at the time of the refusal, his refusal to permit the test was based upon reasonable grounds." Minn.Stat. § 169.-123, subd. 6 (1982). Respondent did not allege before the trial court that she had reasonable grounds to refuse the test; rather, her claim is that she did not have the *capacity* to make a reasonable decision.

Respondent argued to the trial court that the driver must make a knowing and intelligent refusal before her failure to take a test can justify license revocation. The trial court accepted this thesis and ruled that her mental and physical condition was such that she could not knowingly or intelligently refuse the test.

The Commissioner argues that capacity to make an intelligent choice is not a statutory element of such refusal and, hence, is irrelevant. Respondent claims that this interpretation of the statute offends principles of the Fourteenth Amendment, that it would unfairly and unjustly penalize an individual for an unconscious, nonvolitional act never intended by the individual.

In recent years, the implied consent statute has been strictly applied in a series of cases raising questions which, though possessing a certain plausibility, were contrary to the purpose and policy of the statute. . In *State, Dept. of Public Safety v. Hauge*, 286 N.W.2d 727 (Minn.1979), the Supreme Court reversed decisions of the county and district courts, which had found a driver unable to give "knowing" consent due to his injuries and the effects of novocaine administered prior to stitching up his head wounds. The last sentence of the opinion seems to end the inquiry: "Under the implied consent statute, any inquiry into the driver's *capacity* to make a knowing, voluntary, or intelligent *choice* is immaterial." *Id.* at 728 (emphasis added).

Although this language is dictum, cases subsequently decided have put to rest most controversies arising under the statute. *See State, Dept. of · Public Safety v. Wiehle*, 287 N.W.2d 416 (Minn.1979) (presumed consent valid even though unconscious driver was unable to consent at the time of testing); *State v. Hart*, 289 N.W.2d 478 (Minn.1979) (test admissible even though implied consent advisory form never read).

■ As the Minnesota Supreme Court said in *State, Dept. of Public Safety v.*

*Juncewski*, 308 N.W.2d 316, 319 (1981), "[t]his court has repeatedly recognized that laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interests of the drivers involved."

### DECISION

1. We hold that Detective Robertson had reasonable and probable grounds to believe that Rude had been driving under the influence; and

2. We hold that under the implied consent statute, any inquiry into the driver's capacity to make a knowing, voluntary, or intelligent choice is immaterial.

Reversed.