Kathryn Margaret GIDDINGS, petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C7-84-652.

Court of Appeals of Minnesota.

Sept. 18, 1984.

Bernard E. Johnson, Johnson & Doran, Columbia Heights, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Linda F. Close, Joel A. Watne, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Considered and decided by POPOVICH, C.J., and FOLEY and WOZNIAK, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

This is an appeal from an order rescinding the Commissioner of Public Safety's revocation of respondent's driver's license pursuant to Minn.Stat. § 169.123, subd. 4 (1982). Respondent was arrested for D.W.I. and subsequently refused to submit to testing. Following an implied consent hearing, the trial court rescinded the Commissioner's revocation, finding the peace officer did not have probable cause to believe respondent had been operating her car while under the influence of alcohol. Appellant Commissioner claims the trial court's order is clearly erroneous. We reverse.

## FACTS

On February 8, 1984 at about 12:40 a.m., Officer Earl Stroshane of the Minneapolis Police Department stopped respondent Kathryn Margaret Giddings for speeding. As Officer Stroshane reached the driver's door, respondent attempted to shut the motor off and instead engaged the starter. When he asked for her driver's license, Officer Stroshane noticed respondent's eyes were bloodshot. He asked her to come back to the squad car, and observed that respondent needed to use the door and the car itself to gain her balance upon exiting the car.

In the squad car, Officer Stroshane again observed that respondent's eyes were bloodshot and smelled a strong odor of alcohol on her breath which he described in his report as a "fruity" odor. Respondent admitted at this time that she had been drinking.

Officer Stroshane asked respondent to perform some field sobriety tests on a clean, flat sidewalk. On the first balance test, she bent forward, almost lost her balance, and then stood with a definite weave while performing the head tilt test. On another test, she was unable to stand on one leg and count to ten on any of several attempts.

Officer Stroshane concluded respondent was probably under the influence, and placed her under arrest for speeding and D.W.I. She was taken to the Chem-Test Room at the Minneapolis Police Department. After being read the implied consent advisory, she agreed to take a breath test; however, instead of following instructions as to the proper procedure in blowing into the instrument, she blew with little puffs. After she did this three times, the officer administering the test advised that since she had not provided a proper sample, he considered her failure to do so a refusal to submit to the test. Later, about 1:30 a.m., respondent was video-taped. The trial court found that respondent manifested

no impairment of physical or mental capacity at this time, since respondent's speech was coherent on the tape and she was able to perform various sobriety balancing tests.

## ISSUE

Did the peace officer have reasonable and probable grounds to believe that respondent had been driving while under the influence?

## ANALYSIS

This case is controlled by *Rude v. Commissioner of Public Safety*, 347 N.W.2d 77 (Minn.Ct.App.1984). In that case, we reversed a trial court's order rescinding the revocation of a driver's license. The trial court there had determined the peace officer lacked probable cause to believe the driver had been operating her car while under the influence. In reversing, we agreed with the Commissioner's contention that the officer had three objective indications that the driver was under the influence: 1) The officer smelled alcohol on her breath; 2) the officer found ice cubes and a spilled drink that smelled of alcohol on the floor of the driver's seat of her car; and 3) the officer observed a serious accident. We said there that these indicators were such "that to fail to require a test would be unthinkable." *Id.* at 80.

Here, Officer Stroshane had many more objective indicators supporting a finding of probable cause than in *Rude*. The trial court included the following in its findings, all of which support the determination of probable cause in this case: 1) bloodshot eyes; 2) "fruity" odor on breath; 3) admission of drinking alcoholic beverages; 4) weaving on head tilt test; 5) unable to balance on one foot; and 6) speeding violation at 12:40 a.m. In addition, the record reveals the following facts which support the officer's determination: 1) respondent mistakenly engaged the starter while attempting to shut the motor off; and 2) respondent used the door and the vehicle for support while leaving the car.

The trial court apparently was of the view that since respondent was speeding, there was no driving conduct indicating intoxication and that since respondent appeared better on the video-tape one hour after the stop, the officer therefore lacked probable cause to believe that she had been driving while under the influence. While speeding does not necessarily indicate intoxication, it clearly is a common initiator of a D.W.I. arrest. *See Holtz v. Commissioner of Public Safety*, 340 N.W.2d 363 (Minn.Ct.App.1983). Further, that respondent was able to perform sobriety tests one hour after the initial stop does not negate her failed performance at the time of the stop. As this court stated in *State v. Olson*, 342 N.W.2d 638, 640–41 (Minn.Ct.App. 1984), "In reviewing an officer's probable cause determination 'great deference' should be paid by reviewing courts."

## DECISION

Officer Stroshane had reasonable and probable grounds to believe respondent had been driving while under the influence. The order of the trial court rescinding the revocation of respondent's driver's license is reversed.

Reversed.