Diane Leslie **MEYERS**, Respondent,

v.

**COMMISSIONER OF PUBLIC SAFETY**, Appellant.

No. C1–85–575.

Court of Appeals of Minnesota.

Dec. 24, 1985.

John Remington Graham, Brainerd, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by CRIPPEN, P.J., WOZNIAK and LANSING, JJ.

## OPINION

CRIPPEN, Judge.

The Commissioner of Public Safety revoked the driving privileges of respondent Diane Meyers for refusal to submit to testing pursuant to the implied consent law. She brought a petition for judicial review, a hearing was conducted, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals. We affirm.

## FACTS

· Officer Daniel Holtz, a police patrolman for the City of Brainerd, arrested respondent Diane Meyers for driving while intoxicated on November 18, 1984. After reading the implied consent form to her, he asked her if she would provide a blood or urine test; the intoxilyzer test was not offered because an operator was not available. She agreed to provide a blood test.

Holtz took respondent to St. Joseph's Medical Center for a blood test. The nurse on duty informed them that no blood test kits were available. Holtz then asked respondent whether she would take a urine test. She refused. Holtz testified that she used profanity. Respondent testified that she got scared and started crying; she did not remember using profanity, but acknowledged that she could have. She wanted to make a telephone call, to her mother, an attorney, or somebody, but did not tell Holtz whom she wanted to call, nor did she have any idea why she wished to call someone. During the time in which

Holtz was available, respondent did not indicate that she was willing to take a urine test. Sometime after he left, she indicated that she was willing to take a urine test. Her testimony indicated some confusion as to her obligation to take the urine test.

The trial court found that because respondent elected to take the blood test, she did not refuse testing, and it rescinded revocation of her driving privileges. The Commissioner appeals.

## ISSUE

Under Minn.Stat. § 169.123, subd. 2(c) (1984), if an officer offers the driver a blood or urine test, and the driver chooses a blood test, which is subsequently found to be unavailable, does the driver's failure to then agree to take a urine test constitute a refusal under the implied consent law?

## ANALYSIS

Officer Holtz required respondent to take a chemical test to determine the presence of alcohol under the implied consent law. *See* Minn.Stat. § 169.123 (1984). He offered her the choice of a blood or urine test, as provided by statute. *See id.* Section 160.123 states in part as follows:

The peace officer who requires a test pursuant to this subdivision may direct whether the test shall be of blood, breath, or urine. However, if the officer directs that the test shall be of a person's blood or urine, the person may choose whether the test shall be of his blood or urine.

*Id.* § 169.123, subd. 2(c) (1984). If a driver refuses to permit a test, the Commissioner of Public Safety shall revoke the person's driving privileges for one year. *Id.* § 169.-123, subd. 4. Respondent's driving privileges were revoked under this section for her refusal to take the urine test. *Id.*

The issue presented in this case is whether respondent was required under the implied consent law to take the urine test or face revocation when the test which she chose, the blood test, was unavailable. Because all of the relevant facts are undisputed, we must determine whether the trial

court erred as a matter of law. *See Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn.1985).

The statutory provision at issue here was enacted in 1984. 1984 Minn. Laws ch. 622, § 10 (codified at Minn.Stat. § 169.123, subd. 2(c) (Supp.1985)). This court has determined that under that section, a driver who refuses a breath test and insists on a blood test has not made a reasonable refusal. *See Forrest v. Commissioner of Public Safety*, 366 N.W.2d 371, 372 (Minn.Ct. App.1985), *pet. for rev. denied*, (Minn. June 27, 1985). However, the issue presented in this case has not yet been addressed under the current law.

The statute allows the officer to choose the type of test which the driver must take. However, if the officer chooses a blood or urine test, "the person may choose" whether a blood or urine sample will be tested. Minn.Stat. § 169.123, subd. 2(c) (Supp. 1985). This language puts a burden on the State to offer the choices mandated by the legislature. *See State, Department of Highways v. McWhite*, 286 Minn. 468, 472, 176 N.W.2d 285, 288 (1970).

Where, as in this case, the test which the driver chose was not available, and she then had the option of either taking the test which she did not choose, or facing revocation of her driving privileges, she was deprived of the choice which the legislature mandated. Consequently, in this situation, the driver's failure to agree to take the urine test did not constitute a refusal.

This interpretation conforms with prior recognition of legislative policy declarations. In Minn.Stat. § 169.123, subd. 2 (1967), the legislature provided that any person could decline a direct blood test and no action could be taken against such a person unless either a breath or urine test was available. *McWhite*, 286 Minn. at 469, 176 N.W.2d at 286. The legislature inserted these provisions in recognition of the fact that some people have a reasonable aversion to giving blood. *State v. Boland*, 299 Minn. 198, 199, 217 N.W.2d 491, 492 (1974).

In 1982, the legislature amended the statute and reaffirmed its policy against requiring drivers to give blood tests against their will, stating as follows:

No action may be taken against the person for declining to take a direct blood test, if offered, unless an alternative test is offered.

Act of Mar. 19, 1982, ch. 423, § 9, 1982 Minn. Laws 293. Under the 1982 version, a blood test need not be offered, but if it is, refusal will not justify revocation unless an alternative test is offered. *Carlson v. Commissioner of Public Safety*, 357 N.W.2d 391, 392 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Mar. 6, 1985).

In 1984, the legislature deleted language mandating an alternative to a blood test request. *See* Minn. Laws ch. 622, § 10. It enacted subdivision 2(c), providing that if the officer directs the person to take a blood or urine test, the person has a choice of either a blood or urine test. *Id.* It envisioned that both choices would be available. Where the test of the driver's choice is not available, there can be no sanction for failure to agree to take the other alternative.

We note that this case is limited to its particular facts: a breath test was not available, the officer directed the driver to choose between a blood test and urine test, she chose a blood test, and the blood test was subsequently found to be unavailable.

The Commissioner argues that under *Boland*, the supreme court rejected the proposition that urine testing must be offered to all drivers. However, *Boland* dealt with a statutory provision that mandated a different result. *See Boland*, 299 Minn. at 198–99, 217 N.W.2d at 491. The law discussed in *Boland* specifically provided that a driver who declines blood testing may "elect to take either a breath, or urine test, whichever is available, in lieu thereof * * *." *Id.*

The Commissioner contends that the statute presupposes the availability of the test. *See Gunderson v. Commissioner of Pub-*

*lic Safety*, 351 N.W.2d 6, 7 (Minn.1984). In *Gunderson*, the court held that when a driver submits to a breath test and the machine malfunctions, the driver must then submit to a blood or urine test. *Id. Gunderson* did not address the statutory provision or the issue present here.

The Commissioner also argues that the statute should be interpreted broadly in order to effect the remedial purposes of the legislation. *See State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). While DWI laws are to be liberally construed in favor of the public interest, we cannot disregard a legislative declaration. That would happen here if we accepted the Commissioner's view that the statute be interpreted to mean the driver has a choice only so long as both a blood and urine test are available. If the legislature had intended that the choice should be limited to whatever test is available, it would have explicitly put that limitation in the law. For example, in previous language of the implied consent statute, the legislature provided that:

> Any person may decline to take a direct blood test and elect to take either a breath or urine test, whichever is available and offered.

Minn.Stat. § 169.123, subd. 2 (1980). A urine test may be demanded to test for use of a controlled substance. Minn.Stat. § 169.123, subd. 2a (1984). Respondent contends that this enactment precludes any other demand for a urine test under the doctrine of expressio unius est exclusio alterius. It is unnecessary to address this theory in light of our interpretation of the statute.

## DECISION

The trial court correctly determined that respondent driver did not "refuse" testing, when the blood test she chose was unavailable and she declined to take a urine test under Minn.Stat. § 169.123, subd. 2(c).

Affirmed.