Alvin Edward HAUGEN,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C0-85-2317.

Court of Appeals of Minnesota.

June 10, 1986.

Bernard E. Johnson, Johnson & Doran, Columbia Heights, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered, and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Judge.

Respondent's driving privileges were revoked pursuant to the implied consent law. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals. We affirm.

## FACTS

On September 15, 1985, at approximately 1:00 a.m., State Trooper Richard Florhaug was called to the scene of a one-car accident. Florhaug's investigation revealed that the vehicle left tire marks indicating that it had gradually gone across the road and into the left ditch, hit an approach, and flipped over, injuring respondent and his passenger. Respondent indicated to the officer that he was the driver, and that he had swerved suddenly to miss a deer.

The trooper also noted that the vehicle had spread the pipe and plumbing equipment which it had carried over a considerable area. The trooper, who was within two to three feet of respondent, smelled the odor of alcohol and noticed that respondent's speech was a bit dazed and confused.

Respondent and his passenger were taken to the hospital for medical treatment. The trooper also went to the hospital to obtain more information. Respondent said he had been drinking and had had a meal at a restaurant.

The trooper invoked the implied consent law and offered respondent a blood test. Respondent took the test, which revealed an alcohol concentration of .13. Respondent's driving privileges were revoked for failing the test, and he petitioned for judicial review. The trial court concluded that the trooper failed to offer respondent the choice of a blood or urine test as required by Minn.Stat. § 169.123, subd. 2(c) (Supp.

1985), and rescinded the revocation of respondent's driving privileges.

## ISSUE

Did the trial court err when it rescinded the revocation of respondent's driving privileges because the trooper did not offer respondent the choice of taking a blood or a urine test pursuant to Minn.Stat. § 169.-123, subd. 2(c) (Supp.1985)?

## ANALYSIS

The trooper offered respondent only a blood test, which respondent agreed to take. The test yielded an alcohol concentration of .13. Respondent's driving privileges were revoked and he petitioned for judicial review. The trial court concluded that the failure to offer respondent the choice of a blood or urine test was fatally defective, and rescinded the revocation.

This case involves an interpretation of law as applied to undisputed facts. Upon review, this court must determine whether the trial court erred as a matter of law. *See Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 732 (Minn.1985).

The statute governing the tests which the trooper may offer to the driver provides:

> The peace officer who requires a test pursuant to this subdivision may direct whether the test shall be of blood, breath, or urine. However, if the officer directs that the test shall be of a person's blood or urine, the person may choose whether the test shall be of his blood or urine.

Minn.Stat. § 169.123, subd. 2(c) (Supp. 1985).

The law regarding the test the driver may be required to take, and the choice, if any, he or she may have, has changed over the years. Various challenges have arisen under the different versions of the law. *See, e.g., State, Department of Highways v. McWhite,* 286 Minn. 468, 176 N.W.2d 285 (1970). This court recently issued a decision under the current version of the law. *Meyers v. Commissioner of Public Safety,*

379 N.W.2d 219 (Minn.Ct.App.1985). In *Meyers,* the Intoxilyzer test was not available, the driver was offered a choice of a blood or a urine test, and she chose a blood test. The blood test was subsequently found also to be unavailable, and the driver then refused to take a urine test. This court held that she was deprived of the choice mandated by the legislature, and her failure to agree to take the urine test did not constitute a refusal. *Id.* at 221.

The case before the court presents a slightly different issue because the driver was offered only a blood test, which he agreed to take and which he failed. The Commissioner argues that because of these differences, *Meyers* is not dispositive.

We find that the same reasoning used in *Meyers* is applicable here. In *Meyers,* we stated that the statutory language that "the person may choose" whether a blood or urine sample will be tested "puts a burden on the State to offer the choices mandated by the legislature." *Id.* In *Meyers,* this court held that where the test of the driver's choice was not available, there can be no sanction for failure to agree to take the alternative test. *Id.* Similarly, where the driver was not given the choices mandated by the legislature, no revocation should occur, even though the driver did take the test which was offered.

The Commissioner argues that, under a liberal construction of the implied consent law, *see State, Department of Public Safety v. Juncewski,* 308 N.W.2d 316, 319 (Minn.1981), the law should be interpreted so that the officer is required to offer a urine test only if the driver refused the blood test. We decline to adopt this view. The driver was explicitly advised that if he refused testing, his license would be revoked for a year. Minn.Stat. § 169.123, subd. 2(b)(2) (Supp.1985). As far as the driver knows, he has no choice other than taking the offered test or refusing, resulting in revocation for a year. The statute provides that *"the person may choose whether the test shall be of his blood or urine." Id.,* subd. 2(c) (emphasis added). No choice exists when only one test is

offered, and the driver is told his license will be revoked if he refuses.

The legislature has not mandated that all drivers suspected of driving while under the influence be forced to submit to chemical testing. *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517 (Minn. 1985). Instead, it has given the driver the choice of refusing. *Id.* Likewise, the legislature could have required that a person must submit to any test which the officer wished to require. In fact, various requirements for tests have been legislated over the years. *See Meyers*, 379 N.W.2d at 221–22. Most recently, the legislature has decided that if an officer directs a person to take a blood or urine test, the person may choose which test to take. This was presumably done in recognition of the fact that a person may have a reasonable aversion to giving a blood or a urine sample. *See State v. Boland*, 299 Minn. 198, 199, 217 N.W.2d 491, 492 (1974).

The Commissioner argues that the respondent has not been prejudiced by failure to provide him with a choice. Had respondent been offered the choice and agreed to take either a blood or a urine test, the .13 result should be the same. However, we cannot ignore the legislative mandate that a driver must be given a choice. We recognize that the statute does not specifically provide, as it has in previous versions, that no action will be taken against a person for declining to take a blood test unless an alternative test is offered. *See, e.g.*, Minn. Stat. § 169.123, subd. 2(a) (amended to present form in 1984). Presumably, the legislature felt this language was no longer necessary because it mandated that the person must be given a choice. If the statutorily-mandated choices are not provided, rescission of the revocation is appropriate. *Meyers*, 379 N.W.2d at 221.

The Commissioner requests that this court rule on an evidentiary issue and issue an advisory opinion on the matter. We decline to do so. Further, in light of the disposition of the case, it is unnecessary to address this issue.

## DECISION

The trial court did not err when it rescinded the revocation of respondent's driving privileges because the police officer failed to offer respondent the choice of a blood or a urine test.

Affirmed.