**Jennifer Lee FRANKO,**
**Petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

**No. C9–88–886.**

Court of Appeals of Minnesota.

Dec. 6, 1988.

Robert L. McCormick, Minneapolis, for petitioner, appellant.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Heard, considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ.

## OPINION

HUSPENI, Judge.

Appellant was arrested for driving while under the influence. The officer determined that appellant refused testing, and her driver's license was revoked. She petitioned for judicial review, and the trial court sustained the revocation. We affirm.

## FACTS

On October 9, 1987, at approximately 2:00 a.m., State Trooper John Dennig observed appellant make an illegal turn across the grass covered median on Highway 494, and then noticed that her vehicle had expired license tabs. Upon stopping appellant's vehicle, the trooper noticed appellant had difficulty producing her license, emitted a strong odor of alcohol, had slurred, incoherent and rambling speech, and appeared "spaced out." He testified that she denied driving through the median, and was not aware her license tabs were expired.

The trooper did not offer appellant field sobriety tests because he believes the preliminary breath test is more accurate. He testified he has discovered that experienced drinkers can do well on field sobriety tests,

even when intoxicated. Appellant attempted to take the preliminary breath test twice, but was unable to complete it. She explained to the trooper that she had "diminished lung capacity."

Appellant was arrested for violation of Minn.Stat. § 169.121, subd. 1 (1986), and the implied consent advisory was read to her. After two readings, she indicated she understood it.

The trooper then offered appellant the choice between a blood or urine test. He did not offer her a breath test because she had previously indicated she had diminished lung capacity. Appellant decided to take the blood test, and the trooper transported her to Fairview Southdale Hospital. He completed the paperwork and the lab technician arrived. The technician put a plastic tourniquet on appellant's arm. Just as the technician was ready to insert the needle in appellant's arm, she refused to provide a blood sample because the technician was not wearing rubber gloves and appellant was afraid of contracting AIDS.

The trooper advised appellant that she had elected the blood test, and that was the test which he was offering her. She refused to provide a blood sample, and said she would take a urine test.

The trooper testified that appellant requested a urine test about two minutes after she refused the blood test. On cross-examination he testified that he determined a refusal had occurred, even though appellant was offering to provide a urine sample at that time. Appellant testified that she told the officer she refused the blood test, and then immediately requested the urine test.

Appellant's driver's license was revoked for refusing testing, pursuant to Minn.Stat. § 169.123, subd. 4 (1986), and she petitioned for judicial review. The trial court concluded that based upon the totality of the circumstances, the trooper had probable cause to believe appellant was driving, operating, or in physical control of a motor vehicle while under the influence of alcohol. It determined that appellant's refusal to submit to the blood test constituted a refusal under the law because she had already been given and made her choice.

## ISSUES

1. Did the trooper have probable cause to believe appellant was driving while under the influence?

2. Did appellant, who initially agreed to a blood test and then refused the blood test and requested a urine test, refuse testing under the implied consent law?

## ANALYSIS

### I.

Appellant first challenges the trial court's probable cause determination. Probable cause exists when there are sufficient facts which would warrant a prudent person to believe that the individual was driving or operating a motor vehicle while under the influence. *State v. Harris,* 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972). The totality of the circumstances must be considered. *Eggersgluss v. Commissioner of Public Safety,* 393 N.W.2d 183, 185 (Minn.1986). Probable cause must be evaluated from the point of view of a prudent and cautious police officer at the scene. *State v. Harris,* 265 Minn. 260, 264, 121 N.W.2d 327, 332, *cert. denied,* 375 U.S. 867, 84 S.Ct. 141, 11 L.Ed.2d 94 (1963). The duty of the reviewing court is to ensure the officer had a substantial basis for concluding probable cause existed at the time the implied consent law was invoked. *State v. Olson,* 342 N.W.2d 638, 641 (Minn. Ct.App.1984). Many signs of intoxication exist independently or in combination with others; all signs need not be present in every case. *Holtz v. Commissioner of Public Safety,* 340 N.W.2d 363, 365 (Minn. Ct.App.1983). Field sobriety tests are not required to support an officer's reasonable belief. *Id.*

A number of facts exist in this case to support probable cause to believe appellant had been driving while under the influence: the strong odor of alcohol; appellant's 2:00 a.m. driving behavior, in which she made an illegal turn when she drove over the grass covered median which di-

vides Highway 494; appellant's difficulty in retrieving her driver's license; her slurred, incoherent and rambling speech; and her "spaced out" appearance. The trial court properly determined, based upon the totality of the circumstances, that the trooper had probable cause, even without field sobriety tests, to believe appellant was driving while under the influence. *Holtz*, 340 N.W.2d at 365.

## II.

■ Appellant next asserts that she did not refuse testing. She first contends that the trial court erroneously found that the trooper determined she had refused testing before she requested the urine test. Instead, she argues that she demanded the urine test immediately after she rejected the blood test. The witnesses' testimony is somewhat conflicting on this issue. However, there is support in the record for the trial court's findings and its determinations are not clearly erroneous. *State, Department of Highways v. Beckey*, 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971).

Appellant next argues that her act of choosing and then refusing a blood test, and instead requesting a urine test, did not in fact constitute a refusal. We cannot agree. The relevant version of the statute reads:

> The peace officer who requires a test pursuant to this subdivision may direct whether the test shall be of blood, breath, or urine. Action may be taken against a person who refuses to take a blood test only if an alternative test was offered and action may be taken against a person who refuses to take a urine test only if an alternative test was offered.

Minn.Stat. § 169.123, subd. 2(c) (Supp. 1987).

■ Laws governing DWI violations are remedial statutes, and, as such, must be liberally interpreted in favor of the public

interest and against the private interest of the drivers involved. *State, Department of Public Safety v. Juncewski*, 308 N.W.2d 316, 319 (Minn.1981). "Compliance with the procedures of the implied consent law is a prerequisite to revocation pursuant to the implied consent law." *Tyler v. Commissioner of Public Safety*, 368 N.W.2d 275, 280 (Minn.1985).

A driver is given the option of an alternative when offered either a blood or urine test because a person may have a reasonable aversion to giving a blood or urine sample. *State v. Boland*, 299 Minn. 198, 199, 217 N.W.2d 491, 492 (1974); *Haugen v. Commissioner of Public Safety*, 389 N.W.2d 222, 224 (Minn.Ct.App.1986). This court has stressed the importance of giving the driver the choice of tests authorized by the legislature. *Meyers v. Commissioner of Public Safety*, 379 N.W.2d 219, 221 (Minn.Ct.App.1985).

Appellant was given the choice mandated by the statute, and made her choice. Once the choice was made, she was bound by it. In *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512, 517 n. 4 (Minn.), *appeal dismissed* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985), the supreme court indicated refusal was a final decision. "[T]he testing officers should not be required 'to await the driver's convenience of a different time or place' to submit to the statutory requirement." *State v. Palmer*, 291 Minn. 302, 308–09, 191 N.W.2d 188, 191–92 (1972) (citation omitted), *quoted in Nyflot*, 369 N.W.2d at 517 n. 4.

Appellant urges that we apply the reasoning in *Gonzales v. Colorado Department of Revenue*, 728 P.2d 754 (Colo.Ct. App.1986). However, *Gonzales* involves interpretation of a Colorado statute [1] dissimilar to the relevant Minnesota provision here, and we do not find *Gonzales* applicable.

1. Colo.Rev.Stat. § 42–4–1202(3)(a)(II) (1982) reads in relevant part:

Any person who drives any motor vehicle upon the streets and highways * * * may be required to submit to a chemical test of his breath or blood for the purpose of determining the alcoholic content of his blood or

breath, if arrested for any misdemeanor offense arising out of [DWI]. * * * If such person requests that said chemical test be a blood test, then the test shall be of his blood; but, if such person requests that a specimen of his blood not be drawn, then a specimen of his breath shall be obtained and tested.

The statute does not provide a time period during which the driver may change her mind as to her choice of tests. Once the choice of tests is made, the driver is bound by that choice, just as a decision not to take the test is final. *See Nyflot*, 369 N.W.2d at 517 n. 4. There is no reason to distinguish between the situation where a driver is offered a breath test, refuses, and then later agrees to the test, and the situation here, where the driver is offered a choice, makes the choice, and then changes her mind. While the better police practice may have been to allow appellant a urine test, the trooper was not required, under the statute, to do so. We cannot read something into the statute which the legislature did not include. *Boland*, 299 Minn. at 199, 217 N.W.2d at 492. The trial court properly determined appellant refused testing.

### DECISION

The order of the trial court sustaining appellant's driver's license revocation is affirmed.

AFFIRMED.