*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0618**

Michelle MacDonald Shimota, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed May 4, 2015
Affirmed
Kirk, Judge**

Dakota County District Court
File No. 19HA-CV-13-2630

Stephen V. Grigsby, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Ross, Judge; and Reilly, Judge.

# U N P U B L I S H E D   O P I N I O N

**KIRK**, Judge

Appellant challenges the district court's order sustaining the revocation of her driver's license, arguing that the arresting officer lacked probable cause to believe that she was driving while impaired by alcohol. We affirm.

## FACTS

At approximately 11:28 p.m. on April 5, 2013, Rosemount Police Officer Alex Eckstein was on routine patrol and observed a vehicle speeding 38 miles per hour in a posted 30 mile-per-hour zone. Officer Eckstein executed a U-turn and followed the vehicle for a few miles, reaching a top speed of 42 miles per hour. Officer Eckstein observed the vehicle weaving within its own lane and the vehicle's left tires drift left and touch the center line twice. Officer Eckstein activated his emergency lights, initiated a traffic stop of the vehicle, and identified the driver as appellant Michelle MacDonald Shimota.

When Officer Eckstein asked Shimota if she was aware that she was speeding, she replied, "No, I was not, and I'm a reserve cop." Officer Eckstein told Shimota that he detected a slight odor of an alcoholic beverage and asked her how much she had been drinking that evening. Shimota denied consuming any alcohol. Officer Eckstein asked Shimota to exit her vehicle to perform field sobriety tests, and Shimota replied that she was going to go home. Officer Eckstein repeated his request, and Shimota again refused to get out of the vehicle and stated that she would either drive or walk home. Officer Eckstein called for backup.

Rosemount Police Sergeant Brian Burkhalter arrived on the scene to assist. Officer Eckstein repeated the factual basis for his request that Shimota perform field sobriety testing two more times. But Shimota again insisted that she was going to go home and that she was okay to drive. Shimota informed the officers that she was an attorney and a reserve cop, and that she was "not liking this." When Sergeant Burkhalter challenged Shimota about whether she was in fact a reserve cop, she admitted that she had only completed the citizen's

2

academy training. Shimota continued to insist that she had not committed a crime and informed Officer Eckstein that he could give her a speeding ticket.

When Sergeant Burkhalter requested that Shimota step out of the vehicle to complete field sobriety testing, Shimota refused to comply. Despite repeated requests by both officers, Shimota refused to exit her vehicle; the parties came to a standstill. The officers opened the driver's side door of Shimota's vehicle. Sergeant Burkhalter attempted to administer a horizontal gaze nystagmus test while Shimota sat in the driver's seat, but she averted her gaze, making it impossible for him to conduct the test. Sergeant Burkhalter warned Shimota that if she left the scene that she would be placed under arrest for fleeing a police officer. Shimota replied that she could not be arrested because she had to attend a training event in the morning, and she told the officers to give her a speeding ticket. Officer Eckstein, Sergeant Burkhalter, and another assisting officer forcibly removed Shimota from her vehicle, and arrested her for driving while impaired and careless driving. An officer handcuffed Shimota and placed her in the back of Officer Eckstein's squad car.

The officers transported Shimota to the police department, where Officer Eckstein read her the implied-consent advisory. The officers provided Shimota with a telephone and she made phone calls, but the officers were unaware if she called an attorney. After 34 minutes had elapsed, the officers then asked Shimota to complete a breath test, and she requested to immediately go before a magistrate or judge under Minn. Stat. § 169.91 (2014). Shimota did not provide a breath sample as requested, and when the Intoxilyzer machine timed out without her attempting to provide a breath sample, the police officers advised her that she would be charged with test refusal.

Respondent Minnesota Commissioner of Public Safety revoked Shimota's driving privileges under the implied-consent statute, and she petitioned for judicial review of her license revocation. The district court held a hearing on Shimota's petition, and Officer Eckstein, Sergeant Burkhalter, and Shimota testified. The district court also received into evidence the video recording from Officer Eckstein's squad car. The district court sustained the revocation of Shimota's driving privileges, finding that Officer Eckstein and Sergeant Burkhalter had probable cause to believe that Shimota was driving while impaired by alcohol. This appeal follows.

## DECISION

Under the implied-consent statute, a police officer who has probable cause to believe a person was driving, operating, or in physical control of a motor vehicle while impaired and the person has refused a preliminary test may require the person to submit to a chemical test. Minn. Stat. § 169A.51, subd. 1(b) (2014). "The implied consent laws must be liberally construed in favor of protecting the public and given the broadest possible effect." *Johnson v. Comm'r of Pub. Safety*, 366 N.W.2d 347, 350 (Minn. App. 1985). Whether the officer had probable cause to believe that a driver was impaired by alcohol, presents a mixed question of fact and of law. *Clow v. Comm'r of Pub. Safety*, 362 N.W.2d 360, 363 (Minn. App. 1985), *review denied* (Minn. Apr. 26, 1985). "Once the facts have been found the court must apply the law to determine if probable cause exists." *Id.* This court reviews a district court's factual findings for clear error. *In re Source Code Evidentiary Hearings*, 816 N.W.2d 525, 537 (Minn. 2012). Findings of fact are clearly erroneous "only when we are left with a definite and firm conviction that a mistake has been committed." *Jasper v.*

4

*Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002) (quotation omitted). "Due regard is given the district court's opportunity to judge the credibility of witnesses, and findings of fact will not be set aside unless clearly erroneous." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 22 (Minn. App. 2008). A district court's "[c]onclusions of law will be overturned only upon a determination that the [district] court has erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986).

Shimota argues that the district court erroneously based its finding that the officers smelled alcohol on their subjective, not objective, belief. The district court's finding that the officers smelled alcohol is not clearly erroneous. Both officers offered consistent and detailed testimony that they smelled an odor of alcohol coming from either Shimota or her vehicle. Sergeant Burkhalter testified that he smelled a stale alcohol smell coming from Shimota's vehicle. Officer Eckstein testified that while speaking with Shimota he believed that he detected a slight odor consistent with the consumption of an alcoholic beverage, and that he based his belief on his prior experience executing driving-while-impaired arrests. The video also shows both officers in close proximity to Shimota during the traffic stop where they spoke at length with her. An officer needs to have only one objective indication of intoxication to constitute probable cause to believe a person is under the influence, which can include the smell of alcohol. *See Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn. App. 1983). And the probable cause determination of an experienced police officer is entitled to deference. *See State v. Kvam*, 336 N.W.2d 525, 528 (Minn. 1983). Here, the

district court found the officers' testimony to be credible, and this court will not disregard the district court's credibility determinations. *See Snyder*, 744 N.W.2d at 22.

The district court concluded that the officers had probable cause to believe that Shimota was impaired and cited the officers' observation of Shimota's vehicle speeding, crossing the center line twice, and the slight odor of an alcoholic beverage emanating from her vehicle. Additional facts in the record support the district court's determination that the officers had probable cause to believe that Shimota was driving while impaired by alcohol.[1] Shimota argues that her driving conduct does not indicate any alcohol impairment, citing the successful maneuver of her vehicle to avoid hitting a cat prior to the traffic stop as an

---

[1] While the district court relied only on the odor of alcohol, speeding, and Shimota's conduct of driving onto or over the centerline on two occasions to support its probable cause determination, our review of the video satisfies us that there is additional and substantial evidence suggesting impaired driving. The video shows Shimota's vehicle continuously weaving within its lane before Officer Eckstein initiated the traffic stop. We also conclude that Shimota's refusal to cooperate with field sobriety testing and her repeated confusion and disbelief as to the basis of the traffic stop could be viewed by the police officers as indicia of alcohol impairment. Here, the officers exhibited a calm and respectful demeanor towards Shimota during the traffic stop. From the objective standpoint of the officers on the scene, it was not irrational for them, based on their training and experience, to deduce that Shimota's behavior was not reasonable in the context of the traffic stop, and could have only furthered their suspicion that she was impaired by alcohol. *See State v. Koppi*, 798 N.W.2d 358, 362 (Minn. 2011) ("Accordingly, because an officer's training and experience is the lens through which the fact-finder must evaluate the reasonableness of an officer's determination of probable cause, probable cause incorporates the individual characteristics and intuitions of the officer."). Shimota's repeated questioning of the officers about the basis for the stop and her protracted lack of cooperation in exiting the vehicle was grossly disproportionate to the officers' simple request. *See Johnson v. Comm'r of Pub. Safety*, 375 N.W.2d 99, 102-03 (Minn. App. 1985) (holding that driver's frequent questions, belligerence in the police station, and confusion were all indicia of gross intoxication). While the district court concluded that Shimota referred to being a reserve cop in order to garner favorable treatment from the officers, we conclude that the officers could have also reasonably assumed that her statement was an indicator of confusion stemming from intoxication, as Sergeant Burkhalter testified to, or an attempt to influence the officers' decision not to arrest her because she was in fact intoxicated.

6

example. However, this lone fact is outweighed by the totality of evidence supporting the district court's determination of probable cause. *See Kvam*, 336 N.W.2d at 528.

Shimota next argues that it was impossible for the officers to determine whether she was in fact legally too impaired to drive because they failed to offer her a preliminary breath test (PBT). But the law does not require that a PBT be performed in order for an officer to arrest a driver for driving while impaired. *See Holtz*, 340 N.W.2d at 365 (stating that "roadside sobriety tests are not required to support an officer's reasonable belief that a driver is intoxicated"). Moreover, there is nothing in the record indicating that Shimota would have complied had the officers offered her the test. The record is replete with evidence of the officers repeatedly asking Shimota to exit her vehicle to perform field sobriety testing, but she steadfastly refused and even looked away as Sergeant Burkhalter attempted to administer a horizontal gaze nystagmus test. In the video, Shimota informed the officers that she is a practicing driving-while-impaired attorney. As such, it is reasonable to assume that she knew that a PBT was a standard component of field sobriety testing, but she clearly chose not to participate in field sobriety testing and ultimately refused to take an Intoxilyzer test.

**Affirmed**.