## DONALD J. DICK v. G. J. MOLITOR, ADMINISTRATOR OF ESTATE OF CLELL R. KING.

234 N. W. 2d 583.

September 26, 1975—No. 44419.

*Erickson, Zierke, Kuderer, Utermarck & McKenna, Charles R. Zierke,* and *David McKenna,* for appellant.

*Gislason, Alsop, Dosland & Hunter, Daniel A. Gislason, Donald D. Alsop,* and *Carl Jensen,* for respondent.

Heard before Otis, Peterson, and Scott, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an appeal which attacks a verdict awarding plaintiff damages and finding defendant's decedent negligent in the operation of his motor vehicle. The only issue is the sufficiency of the foundation for the admission of a blood sample taken from the deceased driver. We affirm.

Plaintiff was the driver of a Mack semitruck which collided with an automobile on May 16, 1969, near the junction of Trunk Highways Nos. 60 and 86 in southern Minnesota. Plaintiff suffered back and other injuries. Clell R. King, the other driver, and two passengers in his car were killed instantly. Plaintiff brought this action against the King estate.

The only surviving witness to the accident is the plaintiff. He testified that he saw King's car coming toward him over the centerline and that he tried to veer to the left to avoid the collision. The truck then jackknifed and continued to slide forward until it collided with the oncoming car. The King car struck the right side of the truck-tractor.

At a pretrial evidentiary hearing, plaintiff proposed to introduce, over defendant's strenuous objection, a blood sample analyzed by the Bureau of Criminal Apprehension in St. Paul. This sample showed that Clell King had 0.12 percent ethyl alcohol by weight in his blood at the time of the sample. The evidence was admitted.

At trial, plaintiff presented evidence that anyone with more than 0.101 percent weight of blood alcohol in his body is so impaired as to make driving unsafe. The trial court, in its instruction to the jury, read Minn. St. 1969, § 169.121, subd. 1(a),[1] and told the jury that if they found that one of the parties had violated that statute the violation would be prima facie evidence of negligence. By special verdict, the jury found that Clell King was guilty of negligence which constituted 100 percent of the negligence causing the accident.

Defendant argues that although the evidence is strong that plaintiff was on the wrong side of the road at the time of the accident, the evidence of blood alcohol in King's body was decisive

---

[1] Minn. St. 1969, § 169.121, subd. 1, provided in part: "It shall be unlawful * * * for any of the following persons to drive, operate or be in actual physical control of any vehicle within this state:

"(a) A person who is under the influence of an alcoholic beverage * * *."

in the jury's finding that King was liable. Defendant contends that the facts surrounding the taking of the sample suggest that the findings concerning the condition of King's blood at the time of the accident were not reliable. As a result, he argues that the sample was inadmissible. Defendant also asserts that because the sample was drawn by a mortician at the direction of the county coroner, it was taken in violation of Minnesota statutes and was therefore inadmissible as a matter of law.

1. Defendant contends that there is doubt whether the blood sample came from the body of Clell King. Plaintiff, however, introduced testimony to show that the deputy coroner, Dr. Harold Christiansen, first identified the bodies at the time of his arrival at the scene of the accident. He again identified the bodies after they arrived at the funeral home. His identification was based in part on the removal of the personal effects from the clothing of the accident victims. Of the three deceased persons—Clell King, his wife, Juanita, and his father, Adam—confusion could have arisen only between defendant and his father. The difference in age was sufficient to make even that confusion unlikely. As well, the mortician who actually took the blood sample from the body of Clell King testified that he identified the bodies both at the scene of the accident and at the time he drew the sample from Clell King's body in the mortuary. This identification was sufficient to establish a foundation for this evidence.

2. Defendant also asserts that the lapse of time between the accident and the time when the sample was taken was so great as to destroy the accuracy of the sample. There is, on this record, no evidence to support such a claim. Although the laboratory technician testified that some treatises indicate that the length of time may affect the reading of blood alcohol, the evidence was not thereby rendered inadmissible. Zubryski v. Minneapolis St. Ry. Co. 243 Minn. 450, 68 N. W. 2d 489 (1955) ; Dukek v. Greif Brothers Cooperage, 280 Minn. 535, 160 N. W. 2d 159 (1968). The mortician conceded the possibility that the sample taken might be contaminated. However, plaintiff's expert witness testi-

fied that the gas chromatograph which she used to test the blood would have demonstrated the presence of foreign matter and that, in any event, its presence would not have affected the level of ethyl alcohol in the sample. Absent any specific objection to the element of timeliness or any competent evidence to suggest that the sample was not an accurate indication of the level of blood alcohol at the time of the accident, we hold that the admission of the blood sample was within the discretion of the trial court. Smith v. The Kahler Corp. Inc. 297 Minn. 272, 211 N. W. 2d 146 (1973).

3. Finally, defendant argues that the sample was inadmissible as a matter of law. The evidence demonstrates that the blood sample was taken from the body of Clell King by the mortician at the direction of the deputy coroner, Dr. Christiansen. The coroner had the samples taken pursuant to his statutory obligation under Minn. St. 169.09, subd. 11,[2] which requires such samples to be taken by the "coroner or other official performing like functions." Defendant contends that the mortician was not an "official" within the meaning of the statute and that the sample was therefore inadmissible because the restrictions of Minn. St. 169.123, subd. 3, Minnesota's implied-consent statute, which allow only a physician, medical technician, or registered nurse to withdraw blood, ought to apply to extractions made pursuant

---

[2] Minn. St. 169.09, subd. 11, provides in part: "Every coroner or other official performing like functions shall report in writing to the department of public safety the death of any person within his jurisdiction as the result of an accident involving a motor vehicle and the circumstances of such accident. Such report shall be made within five days after such death.

"In the case of drivers killed in motor vehicle accidents and of the death of pedestrians 16 years of age or older, who die within four hours after accident, the coroner or other official performing like functions shall examine the body and shall make such tests as are necessary to determine the presence and percentage concentration of alcohol, and drugs if feasible, in the blood of the victim."

to Minn. St. 169.09, subd. 11.[3] We do not agree that the legislature intended such a result. The implied-consent statute deals only with automobile cases where there is a possibility of criminal sanctions. In those situations, the law is more particular as to who withdraws blood samples because of the greater need for accuracy in the criminal prosecution and because such samples are taken from living persons. The coroner's duty, however, arises only in the case of death, and the sample is not taken to prosecute the deceased. Thus, the policy governing the implied-consent limitations does not apply to a coroner discharging his statutory duty under Minn. St. 169.09, subd. 11.

Moreover, there is nothing in the statute which prohibits the coroner from delegating his responsibility. The mortician who obtained the sample had 23 years' experience, and the evidence showed that his qualifications were adequate to insure an accurate procedure for withdrawing blood. The defense was free to argue, as it did, the possibility of contamination or other irregularity in the taking of the blood sample but such argument goes to the weight of the evidence and not its admissibility.

Affirmed.

---

[3] The Iowa and Michigan Supreme Courts have apparently adopted such a rule. Lessenhop v. Norton, 261 Iowa 44, 153 N. W. 2d 107 (1967); Gard v. Michigan Produce Haulers, 20 Mich. App. 402, 174 N. W. 2d 73 (1969). The Iowa court has recently held, however, that in nonhighway death cases, a blood sample taken by a mortician would be admissible in a civil action. Brooks v. Engel, 207 N. W. 2d 110 (Iowa, 1974).