STATE of Minnesota, Respondent,

v.

Stephen Arnold PALMER, Appellant.

No. C2-85-1928.

Court of Appeals of Minnesota.

Aug. 5, 1986.

Hubert H. Humphrey, III, Atty. Gen., Mark B. Peterson, Popham, Haik, Schnobrich, Kaufman & Doty, Minneapolis, for respondent.

Richard F. Koch, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and FORSBERG, JJ.

FOLEY, Judge.

Stephen Arnold Palmer appeals his conviction for driving under the influence and driving with a blood-alcohol concentration over .10 in violation of Minn.Stat. § 169.-121, subd. 1(a) and (d) (1984) and the denial of his motion for a new trial, citing errors in a number of evidentiary rulings. He further claims that the verdict was not justified by the evidence. We affirm.

## FACTS

Appellant Stephen Palmer was arrested for DWI and driving with an alcohol concentration over .10 on October 13, 1984. He was taken to the local police station, where he was read the implied consent form and where he agreed to consent to a blood test. A standardized blood kit was obtained, and Palmer was transferred to a local hospital where the test was conducted by Joan Goetteman, a medical technician. At trial, she testified that she encountered no problems in withdrawing the blood and observed no irregularities in the blood kit itself. The blood kit was then sealed and sent to the Bureau of Criminal Apprehension (BCA). Paula Johnson, a BCA chemist, testified that gas chromatography tests she conducted on October 18 and 19, 1984 revealed a combined blood alcohol result of .23. Johnson further stated that she observed nothing unusual about the kit, the tests or the blood sample.

On January 2, 1985, the prosecutor notified appellant that the State intended to use the blood test results at trial pursuant to Minn.R.Crim.P. 7.01. In accordance with a defense request for full discovery under Minn.R.Crim.P. 12, a copy of the blood alcohol results was provided. At an August 1, 1985 evidentiary hearing, counsel for both sides learned for the first time that the blood kit was past its expiration date (July 1983) when used to test Palmer's blood alcohol in October 1984. Following the testimony of Johnson and Goetteman, the evidence was ruled admissible.

Trial commenced on September 3, 1985. That same afternoon, Johnson retested the blood sample in anticipation of a defense request to test the blood. She explained that BCA policy requires retesting before a sample is released. The prosecutor was first informed of the retesting on September 4. Later that day, he informed defense counsel of retesting and provided him with a photocopy of the results.

Johnson was allowed to testify that the combined results of the September 3 retesting reflected an alcohol concentration of .218. Defense counsel objected to this evidence, moved for a mistrial, requested to be heard in chambers, and asked to approach the bench. All requests were denied. Johnson then explained that the results were lower than those conducted in October 1984 due to alcohol evaporation, which was normal under the circumstances. At the conclusion of Johnson's direct testimony, defense counsel again renewed his motion for a mistrial on the grounds that the prosecution had failed to comply with discovery rules and had unfairly surprised appellant with new evidence not available at the evidentiary hearing. The motion was denied. The defense was then granted a brief recess to consult with its own expert witness to prepare for Johnson's cross-examination. Following the denial of a third request for a mistrial outside the hearing of the jury, counsel proceeded to cross-examine Johnson.

Johnson acknowledged that the manufacturer of the blood kit recommended that it not be used past the recorded expiration date and that if the original samples had been contaminated in some way, the retesting would reflect similar contaminated readings. She further stated that the blood sample utilized in her retesting on Tuesday, September 3, had been unrefrigerated since the previous Friday. Johnson agreed that this would facilitate deterioration of the sample, but stated that the possibility of the sample creating its own alcohol under these circumstances was remote.

Appellant's own expert witness, Thomas Burr, a forensic scientist retained several weeks prior to trial, stated that the tests Johnson performed were suspect due to the expiration of the blood kit and due to the effects of contamination and blood fermentation. He further stated that, hypothetically, a person weighing approximately 145 pounds would have to consume 13 to 14 12–ounce beers to record an unusually high blood alcohol reading of .23. On cross-examination, he admitted that it was possible, not probable, that an expired blood kit could produce a contaminated sample.

The jury returned a verdict of guilty. This appeal followed.

## ISSUES

1. Did the prosecution provide sufficient foundation for the introduction of alcohol concentration test results of appellant's blood taken with an expired blood kit?

2. Did the introduction of a second set of blood tests conducted during the course of trial by a BCA chemist deprive appellant of a fair trial?

## ANALYSIS[1]

■ 1. When prima facie evidence of test reliability is challenged, the trial judge "must rule upon the admissibility in the light of the entire evidence." *Noren v. Commissioner of Public Safety,* 363 N.W.2d 315, 318 (Minn.Ct.App.1985) (citing *State v. Parker,* 271 S.C. 159, 245 S.E.2d 904, 906 (1978)). On appeal, the trial court's determination of the test reliability must be upheld "unless clearly erroneous, either upon a clear demonstration that it is without substantial evidentiary support or that it was induced by an erroneous view of the law." *Ortendahl v. Bergmann,* 343 N.W.2d 309, 311 (Minn.Ct.App.1984).

■ Appellant argues that the fact that the blood kit had expired prior to appellant's blood test in October 1984 in and of itself renders the evidence inadmissible. We disagree. In *State, Department of Public Safety v. Habisch,* 313 N.W.2d 13 (Minn.1981), the court upheld the trial court's original determination that the state had provided sufficient foundation to justify the admission of breathalyzer tests utilizing a 62-day-old simulator solution. "As the trial court stated, defendant was free to come forward with evidence chal-

lenging this foundation but did not do so." *Id.* at 16. Similarly, in *Dick v. Molitor,* 305 Minn. 390, 234 N.W.2d 583 (Minn.1975), the court rejected an argument by the estate of the deceased driver that a blood sample, taken from the decedent at the mortuary, was too remote in time from the automobile accident to render an accurate sample.

> Absent any specific objection to the element of timeliness or any competent evidence to suggest that the sample was not an accurate indication of the level of blood alcohol at the time of the accident, we hold that admission of the blood sample was within the discretion of the trial court.

*Id.* at 393, 234 N.W.2d at 585.

In the instant case, Johnson testified that she observed no evidence of discoloration, bad odor or carbon dioxide formation in the blood, all characteristics of a tainted sample. She also stated that there was no evidence of infection in this case, a factor that would be evidenced by a dry betadine swab. Goetteman specifically noted that the swab in the expired kit contained liquid and that the vacutainer vacuum was operating at full efficiency because a full draw of appellant's blood was obtained. Appellant's own witness, Thomas Burr, acknowledged that the absence of these factors indicated that there "probably was not alcohol formation."

In short, the prosecution met its burden of establishing that the testing device had "sufficient indicia of reliability." *State v. Dille,* 258 N.W.2d 565, 568 (Minn.1977). Once this was done, it was " 'incumbent upon defendant to suggest a reason why the test * * * was untrustworthy.' " *Tate v. Commissioner of Public Safety,* 356 N.W.2d 766, 768 (Minn.Ct.App.1984) (quoting *Dille,* 258 N.W.2d at 568). The only evidence offered by the defense to rebut

---

1. Because appellant provided only a partial trial transcript, his claim that the evidence was insufficient to support the verdict is not entitled to review by this court. *Cf. Godbout v. Norton,* 262 N.W.2d 374, 376 (Minn.1977), *appeal dismissed,* 437 U.S. 901, 98 S.Ct. 3086, 57 L.Ed.2d 1131 (1978) (a reviewing court cannot consider a sufficiency-of-evidence claim unless provided

with a trial transcript). His contention that the trial court failed to properly instruct the jury on the expiration date of the device used to test the blood originally is also without merit. The limited record before us contains no request for such an instruction nor does appellant claim that such a request was made.

the reliability of the October samples was Burr's testimony · that inaccuracy was a *possibility*. He acknowledged, however, that a possibility of inaccurate readings exists in all cases of blood samples, even if the testing device used is well within recommended usage time.

As the court noted in *Dick*, "[t]he defense was free to argue, as it did, the possibility of contamination or other irregularity in the taking of the blood sample but such argument *goes to the weight of the evidence and not its admissibility.*" *Dick*, 305 Minn. at 394, 234 N.W.2d at 586 (emphasis supplied). The trial court properly exercised its discretion in admitting the evidence.

2. Appellant also contends he was prejudiced by the prosecutor's failure to disclose that the September 1985 blood test results would be utilized at trial.

 The prosecutor here was not aware of the retesting until Johnson advised him of this fact on September 4, 1985, the second day of the trial. Although defense counsel could not recall any conversation relating to the prosecutor's intent to introduce the evidence, counsel admitted receiving a photocopy of the results later that day and assumed they would be used at trial. It is also significant that appellant's expert witness was retained several weeks before trial. Appellant could have had Burr retest the blood samples but failed to do so.

More important, however, is the fact that the September results are actually favorable to the defense. As the trial court stated:

> [T]he Court feels that it is the responsibility of the City Attorney to notify [defense counsel] of this new test result. Now, I am not sure that this test is necessarily favorable to the prosecution. It is a different reading, and it is something that could be brought up on examination of the witness either by yourself, * * *. It seems to be an inconsistent reading, and I am not sure that this is helpful to the State's case.

> I think it might have been better, Mr. City Attorney, to have advised me prior to Court this morning about this test result, * * *. In any event, the witness has testified to the result and you are going to have a full right of cross examination of the witness about all these test results, * * *.

### DECISION

Appellant's conviction for driving under the influence and driving with a blood alcohol concentration exceeding .10 in violation of Minn.Stat. § 169.121, subd. 1(a) and (d) (1984) is affirmed.

Affirmed.