**Jeffrey Mark NELSON, petitioner, Appellant,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Respondent.**

No. A09–690.

Court of Appeals of Minnesota.

March 23, 2010.

David J. Risk, Allan H. Caplan & Associates, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Mary R. McKinley, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by HUDSON, Presiding Judge; CONNOLLY, Judge; and JOHNSON, Judge.

## OPINION

JOHNSON, Judge.

The commissioner of public safety revoked Jeffrey Mark Nelson's driver's license after he was charged with driving while impaired (DWI). After providing a blood sample that was drawn using an expired blood-test kit, Nelson was asked to provide a second blood sample. Nelson argues that a police officer violated his limited right to counsel by refusing to allow him to speak with an attorney again before deciding whether to provide a second blood sample. He also argues that the officer was not permitted to request a second blood sample from him. We affirm.

## FACTS

In September 2008, Brooklyn Park police officer Robert Anderson arrested Nelson for DWI. Officer Anderson transported Nelson to the Brooklyn Park jail, where he read the implied-consent advisory to Nelson and asked him to submit to chemical testing. Nelson asked to speak with an attorney, and a telephone was made available to him. After speaking with an attorney for approximately 25 minutes, Nelson agreed to take a breath test. But when the breath test was administered, Nelson did not provide a sufficient breath sample.

Officer Anderson then asked Nelson to submit to an alternative chemical test and read the implied-consent advisory to Nelson for a second time. Nelson stated that he wished to speak to his attorney again, and Officer Anderson allowed him to do so. Nelson spoke with his attorney for approximately eight minutes and agreed to a blood test. Officer Anderson transported Nelson to a hospital, where a nurse drew a blood sample using a blood-test kit designed to measure blood-alcohol concentration.

Shortly after blood was drawn, however, the nurse informed Officer Anderson that the kit "was expired" and "no good." Officer Anderson consulted by telephone with a supervising police officer. Officer Anderson then informed Nelson that he must provide another blood sample. Officer Anderson did not read the implied-consent advisory to Nelson for a third time. Nelson asked to speak to his attorney again. Officer Anderson refused Nelson's request to speak with his attorney for a third time and informed Nelson that his failure to provide a second blood sample would be considered a refusal to submit to a chemical test. Approximately 20 minutes later, a new blood-test kit was obtained, and Nelson provided a second blood sample.

In October 2008, Nelson filed a petition for judicial review of his license revocation. At an implied-consent hearing in February 2009, Nelson challenged the revocation on several grounds. He argued that (1) Officer Anderson did not have probable cause to believe that Nelson was driving while impaired, (2) the implied-consent statute did not authorize Officer Anderson to request a second blood sample, (3) Officer Anderson was required to read the implied-consent advisory for a third time when requesting a second blood sample, and (4) Officer Anderson violated Nelson's limited right to counsel by denying him an opportunity to speak with his attorney for a third time before providing a second blood sample. After the implied-consent hearing, the district court issued an order that summarily sustained the revocation of Nelson's driver's license without making any findings of fact. Nelson appeals.

## ISSUES

I. Did Officer Anderson violate Nelson's limited right to counsel by denying him the opportunity to speak with his attorney again after the request for a second blood sample?

II. Was Officer Anderson permitted to request a second blood sample from Nelson because the first blood sample was drawn using an expired blood-test kit?

## ANALYSIS

Nelson challenges the district court's order sustaining the revocation of his driver's license. He reasserts the second and fourth arguments he asserted in the district court.

## I.

Nelson first argues that the district court erred by rejecting his argument that Officer Anderson violated his limited right to counsel. Specifically, Nelson argues that Officer Anderson was required to allow him to speak with his attorney again before deciding whether to provide a second blood sample. We apply a *de novo* standard of review to the district court's conclusions of law on this issue. *Kuhn v. Commissioner of Pub. Safety*, 488 N.W.2d 838, 840 (Minn.App.1992), *review denied* (Minn. Oct. 20, 1992).

"[U]nder the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, an individual has the right, upon request, to a reasonable oppor-

tunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Commissioner of Pub. Safety,* 473 N.W.2d 828, 835 (Minn.1991). In *Friedman,* the supreme court held that

> the point at which an individual is asked by law enforcement officials to undergo a blood alcohol test constitutes a critical stage in the criminal process and that article I, section 6 of the Minnesota Constitution guarantees an individual in such a situation the limited right to counsel within a reasonable time before submitting to testing.

*Id.* at 837. An individual's "right to counsel is considered vindicated when the driver is provided with a telephone prior to testing and given a reasonable amount of time to contact and consult with an attorney." *Mell v. Commissioner of Pub. Safety,* 757 N.W.2d 702, 712 (Minn.App.2008).

■ Relying on *Friedman,* Nelson contends that Officer Anderson should have allowed him to speak with his attorney again after the request for the second blood sample because it was a "critical stage" in the DWI proceedings. *See Friedman,* 473 N.W.2d at 837. Nelson notes that a driver's request to speak with an attorney prior to testing must be honored unless it would "unreasonably delay administration of the test," Minn.Stat. § 169A.51, subd. 2(4) (2008); *see also Friedman,* 473 N.W.2d at 835, and further notes that there would have been no such delay in this case because approximately 20 minutes passed before the second blood-test kit was delivered to the hospital. In response, the commissioner contends that Nelson's right to counsel was vindicated because he "twice consulted with an attorney and decided that he wanted to cooperate and provide a blood test."

Nelson's argument is contrary to this court's opinion in *State v. Fortman,* 493 N.W.2d 599 (Minn.App.1992), in which we held that a driver's limited right to counsel was not violated when a law enforcement officer refused to allow the driver to speak with an attorney a second time after the officer requested an alternative chemical test. *Id.* at 601–02. The driver in *Fortman* initially submitted to a breath test, but the breath-test machine malfunctioned. *Id.* at 600. The officer then asked the driver to submit to a blood test or urine test. *Id.* The driver asked to speak with his attorney again, but the officer did not allow the driver to do so. *Id.* On appeal, the driver argued that his limited right to counsel was not vindicated because "the malfunction of the Intoxilyzer triggered additional questions not present prior to his decision to provide a breath sample." *Id.* at 601. We disagreed and held that the driver's "constitutional right to counsel was not violated when his second request to contact an attorney was denied." *Id.* at 602. There is no basis for distinguishing the holding of *Fortman* from Nelson's request for a third consultation with counsel. Thus, the district court did not err by rejecting Nelson's argument that his limited right to counsel was violated.

## II.

■ Nelson also argues that the district court erred by rejecting his argument that the implied-consent statute did not authorize Officer Anderson to request a second blood sample. Nelson contends that he "fulfilled his obligation under the Implied Consent Law once he provided the first blood sample" and that "a person who consents to a blood draw cannot be required" to consent to a second blood draw merely because the first blood sample was drawn using an expired blood-test kit. Nelson does not cite the Fourth Amendment to the United States Constitution or its Minnesota counterpart but, rather, bases his argument solely on the implied-

consent statute. We apply a *de novo* standard of review to issues of statutory interpretation. *Johnson v. Commissioner of Pub. Safety,* 756 N.W.2d 140, 143 (Minn. App.2008).

Nelson relies principally on two cases in which drivers were not required to provide an additional sample for chemical testing after having done so once. The first case is *Young v. Commissioner of Pub. Safety,* 420 N.W.2d 585 (Minn.1988). The officer in that case determined that a breath sample provided by the driver was deficient even though the breath-test machine, which was functioning properly, did not indicate a deficient sample. *Id.* at 586–87. The officer asked the driver to submit to a second breath test, and the driver complied with the request. *Id.* at 586. The second test indicated a higher alcohol concentration than the first test. *Id.* The supreme court held that the machine, not the officer, should determine whether a sample is deficient and, accordingly, that the first sample was not deficient. *Id.* at 587. The supreme court further held that if "the first test is reliable and adequate," then "a driver need not submit to a second test." *Id.*

The second case on which Nelson principally relies is *Meyers v. Commissioner of Pub. Safety,* 379 N.W.2d 219 (Minn.App. 1985). In that case, the officer requested a blood or urine sample because no one was available to administer a breath test. *Id.* at 220. The driver agreed to submit to a blood test. *Id.* Upon arriving at a hospital, the officer was informed by medical personnel that no blood-test kits were available. *Id.* The officer then requested a urine test, but the driver refused. *Id.* This court held that the driver's refusal was reasonable and, thus, restored the driver's license. *Id.* at 221–22.

A third case also bears on Nelson's argument. In *Gunderson v. Commissioner of Pub. Safety,* 351 N.W.2d 6 (Minn.1984), a driver consented to a breath test, but the breath-test machine malfunctioned. *Id.* at 7. The officer asked the driver to submit to either a blood test or a urine test, but the driver refused. *Id.* The supreme court considered "whether a driver who submits to a breath test is obligated to submit to a blood or urine test if the breath testing machine does not work" and held that "a driver is obligated to do so in such a situation if he does not want to lose his license." *Id.* Based on *Gunderson,* this court previously recognized that "[i]f a test malfunctions, a driver may be required to submit to an alternative test." *Young v. Commissioner of Pub. Safety,* 408 N.W.2d 212, 214 (Minn.App.1987), *aff'd,* 420 N.W.2d 585 (Minn.1988).

The facts of this case must be distinguished from those of *Young* and *Meyers.* In *Meyers,* this court's analysis tracked a statute "providing that if the officer directs the person to take a blood or urine test, the person has a choice of either a blood or urine test." 379 N.W.2d at 221 (citing Minn.Stat. § 169.123, subd. 2(c) (Supp. 1985)).[1] We reasoned that "[w]here the test of the driver's choice is not available, there can be no sanction for failure to agree to take the other alternative." *Id.* The *Meyers* court indicated that the holding of the case was "limited to its particular facts." *Id.* In contrast to *Meyers,* nothing in the implied-consent statute forbids an officer from requiring a driver to provide a second blood sample if a first

---

1. A similar concept is present in the current version of the statute: "Action may be taken against a person who refuses to take a blood test under this subdivision only if a urine test was offered and action may be taken against a person who refuses to take a urine test only if a blood test was offered." Minn.Stat. § 169A.51, subd. 4 (2008).

blood sample cannot be tested because a blood-test kit had expired.

In *Young*, the supreme court rejected the officer's determination that the first breath sample had failed to yield a valid and reliable result, thus undermining the factual basis of the purported need for another breath sample. 420 N.W.2d at 586–87. The supreme court relied in part on a statute providing that a breath sample is "adequate" if the breath-test machine analyzes the sample and does not indicate that the sample is deficient. *Id.* at 586 (citing Minn.Stat. § 169.123, subd. 2(a) (1986)); *see also* Minn.Stat. § 169A.51, subd. 5(b) (2008) (defining adequate breath sample). In this case, however, there is no statutory provision determining whether a blood sample is one that may be tested and relied upon. *See* Minn.Stat. § 169A.51, subd. 7 (2008) (describing requirements for performing blood draw). Furthermore, there is no dispute that the first blood-test kit had expired or that Officer Anderson genuinely believed that the expired test kit presented obstacles to achieving a valid and reliable test result.

Nelson seeks to avoid the distinction between *Young* and this case by challenging the commissioner's premise that a blood test based on an expired blood-test kit may not be valid and reliable. He cites *State v. Palmer*, 391 N.W.2d 857 (Minn. App.1986), for the proposition that test results derived from expired blood-test kits are valid and reliable. In *Palmer*, this court affirmed a DWI conviction by upholding the district court's ruling that a test result based on an expired blood-test kit was admissible evidence of alcohol concentration and sufficient evidence of guilt. *Id.* at 859–60.

Nelson's argument is flawed because *Palmer* did not establish a categorical rule that test results obtained from expired blood-test kits *always* are admissible.

Rather, we simply held that the district court did not abuse its discretion by admitting the test results into evidence in that case and that the evidence was sufficient to support the guilty verdict. *Id.* The district court's evidentiary ruling was based on expert testimony concerning the reliability of the test result, which the prosecution offered to overcome the defendant's challenge. *Id.* at 859. In this case, Officer Anderson was justifiably concerned about the expired blood-test kit. In a different case with a different factual record, a different district court judge might exercise his or her discretion to exclude such evidence. In addition, the commissioner presumably would prefer to not retain an expert witness to establish the reliability of a test result. To hold that a test result based on an expired blood-test kit is, as a matter of law, admissible in a license-revocation proceeding, as Nelson urges, would be inconsistent with the fact-based reasoning in *Palmer*. Furthermore, to so hold would endorse the use of potentially unreliable evidence in future cases, without regard for the potential significance of expiration dates. Officer Anderson reasonably determined that the integrity of the first blood draw might be called into question because the blood sample was obtained using an expired blood-test kit. Thus, his request for a second blood draw was not improper for the reasons that were present in *Young*.

Contrary to Nelson's arguments, the facts of this case are most similar to those of *Gunderson*. In both that case and this case, the scientific means of testing alcohol concentration was technically imperfect. *Gunderson*, 351 N.W.2d at 7. In each case, the officer administering the test was not aware of the problem before taking the sample. *Id.* In each case, the problem was not attributed to the officer. *Id.* The expired blood-test kit in this case is the

equivalent of the malfunctioning breath-test machine in *Gunderson*. Officer Anderson's attempt to remedy the problematic first blood draw with a second blood draw does not make the second request improper; the reason why the first blood draw was imperfect did not apply to the second blood draw. In this situation, the caselaw provides that Officer Anderson was justified in requesting a second blood sample. *See id.; Young*, 408 N.W.2d at 214. Thus, the district court did not err by rejecting Nelson's argument that Officer Anderson was not authorized to request a second blood draw.

## DECISION

Nelson's limited right to counsel was not violated by Officer Anderson's refusal to allow Nelson to speak with his attorney for a third time before deciding whether to provide a second blood sample. The request that Nelson provide a second blood sample was authorized by the implied-consent statute. Thus, the district court did not err by sustaining the revocation of Nelson's driver's license.

**Affirmed.**