*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2364**

State of Minnesota,
Respondent,

vs.

Amanda Sue Thorne,
Appellant.

**Filed September 22, 2014
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-12553

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Jamie L. Kreuser, Assistant St. Louis Park City Attorney, Minneapolis, Minnesota (for respondent)

William J. Mauzy, Casey T. Rundquist, Law Offices of William J. Mauzy, Minneapolis, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges her impaired-driving conviction on the ground that there was

insufficient evidence supporting the vehicle stop and further challenges the

constitutionality of the chemical test. Because there was reasonable, articulable suspicion to stop appellant's vehicle and she freely and voluntarily consented to chemical testing, we affirm.

**FACTS**

On April 20, 2013, around 3:45 a.m. a Minnesota State Patrol trooper saw a red sport utility vehicle weaving over the lane lines and veering onto the right shoulder of the highway. The trooper continued to follow the vehicle and noticed that it "regularly" crossed over the lane lines and drove down the middle of the lane line without signaling lane changes. Based on the time of day and the driving conduct, the trooper concluded that the vehicle was potentially being driven by an impaired driver and initiated a traffic stop. The trooper identified appellant as the driver. The trooper noticed a strong smell of alcohol coming from the vehicle and saw that appellant's eyes were bloodshot and watery. The trooper led appellant through a series of field sobriety tests and concluded that she failed those tests. A preliminary breath test revealed an alcohol concentration of .16.

The trooper placed appellant under arrest and read her the motor vehicle implied-consent advisory in the squad car at the stop location. The trooper asked appellant if she wished to consult with an attorney, and she indicated that she did. The trooper provided appellant with her cell phone and telephone directories and left her alone in the squad car to make telephone calls. The trooper transported appellant to the Hennepin County jail, and appellant continued to make phone calls in the squad car. Appellant contacted her mother but did not contact an attorney. After appellant stopped making phone calls, the

trooper asked if she was finished, and she stated that she was. The trooper asked appellant if she would submit to a breath test, and she agreed. The breath test recorded an alcohol concentration of .15, and the state charged appellant with one count of fourth-degree DWI, alcohol concentration .08 within two hours, pursuant to Minn. Stat. § 169A.20, subd. 1(5) (2012), and one count of fourth-degree DWI, driving while impaired, pursuant to Minn. Stat. § 169A.20, subd. 1(1) (2012).

The district court held an evidentiary hearing to consider whether there was a legal basis to stop appellant's vehicle and whether appellant validly consented to submit to chemical testing. The district court admitted testimony from the state trooper and received the squad car video into evidence. The parties reappeared for a plea hearing and sentencing, and the district court judge denied appellant's motion to suppress from the bench. With respect to the stop issue, the district court concluded that there was a legal basis to stop the vehicle. The district court reviewed the squad video and determined that there were "numerous times" when the vehicle did not stay in its lane, including one instance where the vehicle was "very substantially into the fog or shoulder lane," with the wheel "well over that line." The district court concluded that the trooper had reasonable, articulable suspicion to stop appellant's vehicle based upon appellant's driving conduct, and the stop was therefore lawful.

With respect to the consent issue, the district court found that the trooper read appellant the implied-consent advisory and that appellant understood the advisory. The district court further found that the trooper gave appellant the opportunity to speak with an attorney. The district court recognized that, although appellant did not speak with an

3

attorney, that was not a "necessary element" under *Brooks*. The district court concluded that appellant consented to submit to testing.

Appellant stipulated to the state's evidence pursuant to Minnesota Rule of Criminal Procedure 26.01, subdivision 4, to preserve the pretrial issues for appeal. The parties agreed to amend the charges to one count of fourth-degree DWI, alcohol concentration .08 within two hours, pursuant to Minn. Stat. § 169A.20, subd. 1(5), and one count of careless driving. The district court convicted appellant on both counts and sentenced her. This appeal followed.

## D E C I S I O N

## I.

Appellant argues that the district court erred in determining that the trooper had reasonable, articulable suspicion to stop appellant's vehicle and denying her motion to suppress. When reviewing a district court's pretrial order on a motion to suppress evidence, "we review the district court's factual findings under a clearly erroneous standard and the district court's legal determinations de novo." *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). The United States Constitution and the Minnesota Constitution prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. A traffic stop constitutes a seizure implicating the Fourth Amendment. *State v. Thiel*, 846 N.W.2d 605, 610 (Minn. App. 2014), *review denied* (Minn. Aug. 5, 2014).

However, limited investigatory stops are permissible if a law-enforcement officer has "reasonable articulable suspicion of a motor vehicle violation or of criminal activity."

4

*State v. Johnson*, 645 N.W.2d 505, 508 (Minn. App. 2002). A reasonable, articulable suspicion exists if the police officer can present "a particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). The standard for such a stop is minimal, but must be based on more than "mere whim, caprice, or idle curiosity." *Marben v. State Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). Thus, "[a] hunch, without additional objectively articulable facts, cannot provide the basis for an investigatory stop." *State v. Harris*, 590 N.W.2d 90, 101 (Minn. 1999).

The trooper testified that he observed appellant's vehicle weaving over the lane lines "way up" onto the right shoulder, that the vehicle's tires crossed over the fog line, and that the vehicle "regularly" crossed over the lane lines without signaling lane changes. Minnesota law is clear that "[i]f an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997). On laned highways, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane." Minn. Stat. § 169.18, subd. 7(a) (2012). Numerous appellate court cases have likewise determined that crossing over traffic lanes, swerving, and failing to stay within properly marked traffic lanes provides reasonable, articulable suspicion of a traffic-law violation sufficient to justify a stop. *See, e.g.*, *State v. Jones*, 649 N.W.2d 481, 484 (Minn. App. 2002) (finding police stop of vehicle lawful where driver changed lanes without signaling); *State v. Wagner*, 637 N.W.2d 330, 336 (Minn. App. 2001) (finding reasonable basis for stop where driver

crossed center line and drove onto shoulder). Based on appellant's driving conduct, the trooper had an objective basis for stopping her vehicle.

Appellant argues that even if she weaved within her lane, she otherwise maintained safe driving habits. It is true that a single instance of swerving within one's own lane of traffic is not sufficient, by itself, to create a reasonable, articulable suspicion of criminal activity to support a traffic stop. *State v. Dalos*, 635 N.W.2d 94, 96 (Minn. App. 2001). Here, however, the district court found that appellant committed a traffic violation by failing to stay within her lane of traffic. Specifically, the district court found that appellant's vehicle veered over the lane of traffic "numerous times," and, at the beginning of the squad video, drove her vehicle "very substantially into the fog or shoulder lane," with the wheel "well over that line." The district court credited the trooper's testimony that appellant committed a traffic violation by swerving over the lanes of traffic, and "[d]eference must be given to the district court's credibility determinations." *State v. Klamar*, 823 N.W.2d 687, 691 (Minn. App. 2012). The district court's factual findings are supported by the record and it did not err in concluding that there was reasonable, articulable suspicion of criminal activity sufficient to justify the stop of appellant's vehicle.

**II.**

Appellant argues that she did not consent to a breath test. The United States and Minnesota Constitutions prohibit unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. As a general rule, taking a sample of a person's blood, breath, or urine constitutes a search under the Fourth Amendment and requires a

6

warrant, unless an exception applies. *Ellingson v. Comm'r of Pub. Safety*, 800 N.W.2d 805, 807 (Minn. App. 2011) (citing *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 109 S. Ct. 1402, 1413 (1989)), *review denied* (Minn. Aug. 24, 2011). Consent is an established exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

In order for the consent exception to apply, the state "must show by a preponderance of the evidence that the defendant freely and voluntarily consented." *Id.* at 568. Whether consent is voluntary must be determined on a case-by-case basis, examining the totality of the circumstances. *State v. Lemert*, 843 N.W.2d 227, 233 (Minn. 2014). This analysis includes "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569. The "nature of the encounter" includes such factors as how the police came to suspect a defendant of driving under the influence, the request to take a chemical test, which includes whether the implied-consent advisory was read, and whether the defendant had the right to consult with an attorney. *Id.*

Given the totality-of-the-circumstances, the district court did not err in concluding that appellant freely and voluntarily consented to a chemical test. The trooper lawfully placed appellant under arrest for suspicion of driving while intoxicated and read her the implied-consent advisory. The wording of the advisory is compelled by statute as set forth in Minnesota Statute section 169A.51, subdivision 2 (2012). Under Minnesota's implied-consent law, anyone who drives a motor vehicle in the state consents to a chemical test for the purpose of determining the presence of alcohol when certain

conditions are met. Minn. Stat. § 169A.51, subd. 1(a) (2012); *Brooks*, 838 N.W.2d at 569. A police officer may require someone to submit to a test when the officer "has probable cause to believe the person committed the offense of driving while impaired and the person has been lawfully arrested for driving while impaired." *Brooks*, 838 N.W.2d at 569. As part of the advisory, appellant was told both that Minnesota law requires the person to take a test and that refusing to submit to the test is a crime. Minn. Stat. § 169A.51, subd. 2(1)-(2). Here, there is no evidence to suggest that appellant's consent "was coerced in the sense that [her] will had been overborne and [her] capacity for self-determination critically impaired." *Brooks*, 838 N.W.2d at 571. The state has met its burden of demonstrating that appellant freely and voluntarily consented to chemical testing, and the district court did not err in denying appellant's motion to suppress.

Appellant contends that she was unable to consult with an attorney prior to the breath test. The Minnesota Supreme Court has articulated that under the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, "an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing." *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828, 835 (Minn. 1991). However, due to the "evanescent nature" of the evidence in DWI cases, the accused is only entitled to a limited amount of time within which to contact an attorney. *Id.* "An individual's right to counsel is considered vindicated when [she] is provided with a telephone prior to testing and given a reasonable amount of time within which to contact and consult with an attorney." *Nelson v. Comm'r of Pub. Safety*, 779 N.W.2d 571, 574 (Minn. App. 2010).

The facts demonstrate that the trooper offered appellant the opportunity to consult with an attorney and provided her with telephone directories and her own cell phone. Appellant made numerous phone calls and spoke with her mother, but did not contact an attorney. Appellant stopped making telephone calls and indicated to the trooper that she was finished. Appellant was properly advised of her right to counsel and given a reasonable amount of time within which to consult with an attorney. The fact that appellant was unsuccessful in contacting an attorney does not give rise to the conclusion that she was coerced into giving her consent. *See Eveslage v. Comm'r of Pub. Safety*, 353 N.W.2d 623, 627 (Minn. App. 1984) (holding that the right to counsel is vindicated when the accused cannot locate her own attorney and there are no other attorneys the accused wishes to call).

Appellant also argues that she was not afforded enough privacy to contact an attorney because she made the telephone calls from the trooper's squad car. In *State Dep't of Pub. Safety v. Held*, the Minnesota Supreme Court addressed the question of whether a police officer must provide an impaired-driver with a private room from which to contact an attorney. 311 Minn. 74, 75-76, 246 N.W.2d 863, 864 (1976). Recognizing that police departments may not have rooms "suitable for such use," and that "potential security problems" could arise, the *Held* court declined to impose such a requirement. *Id.* at 76, 246 N.W.2d at 864; *see also Shovein v. Comm'r of Pub. Safety*, 357 N.W.2d 386, 388 (Minn. App. 1984) (stating that the degree of privacy depends on security of available facilities); *Comm'r of Pub. Safety v. Campbell*, 494 N.W.2d 268, 269-70 (Minn. 1992) ("[P]olice do not have to provide a DWI arrestee with a private telephone because

the arrestee's rights will be sufficiently protected by the subsequent exclusion of any overheard statements or any fruits of those statements.").

Lastly, appellant attempts to distinguish *Brooks* by claiming that she is inexperienced with impaired-driving arrests and has had no prior experience with the implied-consent process. We are not persuaded by this argument. A totality-of-the-circumstances analysis includes consideration of "the kind of person the defendant is." *Brooks*, 838 N.W.2d at 569. In this case, appellant asserts that she has no prior history of DWI arrests and is unfamiliar with testing procedures. Even if appellant can demonstrate that this factor weighs in her favor, it is not enough, standing alone, to support a conclusion that she was coerced. When viewed as a whole, the circumstances support the district court's conclusion that appellant's consent to submit to chemical testing was freely and voluntarily given.

**Affirmed.**