*This opinion will be unpublished and*
*may not be cited except as provided by*
*Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-2178**

Corey James Wright, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed August 17, 2015**
**Affirmed**
**Johnson, Judge**

Beltrami County District Court
File No. 04-CV-14-595

Charles A. Ramsay, Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota (for appellant)

Lori Swanson, Attorney General, Rachel E. Bell, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Johnson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

The commissioner of public safety revoked Corey James Wright's driver's license after he was arrested for driving while impaired and a urine test showed that his alcohol concentration exceeded .08. Wright sought judicial review of the commissioner's

revocation. The district court denied his petition to rescind the revocation on the ground that Wright voluntarily consented to chemical testing. We affirm.

## FACTS

On January 13, 2014, Bemidji Police Officer Mark Pinoniemi responded to a report of a vehicle that was weaving and being driven erratically. Officer Pinoniemi stopped the vehicle. Officer Pinoniemi noticed that the driver, who was identified as Wright, appeared to be intoxicated. After administering field sobriety tests, Officer Pinoniemi arrested Wright for driving while impaired.

At the Beltrami County Jail, Officer Pinoniemi read the implied-consent advisory to Wright and requested that he submit to a breath test. Wright agreed and provided a sample of his breath, but the breath-testing device did not register a result. Officer Pinoniemi and his sergeant determined that Wright did not refuse the test, so they offered him the alternative of a urine test. Wright asked whether he could talk to an attorney before agreeing to take the urine test. Officer Pinoniemi returned Wright's cell phone to him. Wright called and spoke with an attorney and then informed Officer Pinoniemi that the attorney would visit him at the jail. Officer Pinoniemi allowed Wright to meet with the attorney in a conference room. After the meeting, Wright provided a urine sample, which revealed an alcohol concentration of .134.

The commissioner of public safety revoked Wright's driver's license. *See* Minn. Stat. § 169A.52, subd. 4 (2014). Wright petitioned the district court to rescind the revocation of his driver's license. In a memorandum accompanying his petition, Wright argued that he did not consent to the urine test. The district court held a hearing on the

2

petition. Officer Pinoniemi and a Beltrami County deputy sheriff testified for the commissioner. Wright did not testify and did not present any other evidence. The district court found that Wright "freely and voluntarily consented to alcohol concentration testing after a valid reading of the Advisory." Accordingly, the district court sustained the revocation of Wright's driver's license. Wright appeals.

## DECISION

Wright argues that the district court erred by finding that he provided valid consent to the urine test. This court applies a clear-error standard of review to a district court's finding that a driver validly consented to a chemical test. *See Jasper v. Commissioner of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002).

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. A test of a person's urine constitutes a search for purposes of the Fourth Amendment. *Skinner v. Railway Labor Execs.' Ass'n*, 489 U.S. 602, 617, 109 S. Ct. 1402, 1413 (1989); *see also State v. Netland*, 762 N.W.2d 202, 212 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552, 1568 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). As a general rule, a search requires either a warrant or an exception to the warrant requirement. *McNeely*, 133 S. Ct. at 1558; *Brooks*,

838 N.W.2d at 568. The consent of the person whose urine is tested is an exception to the warrant requirement. *Brooks*, 838 N.W.2d at 568. In an implied-consent case, the commissioner of public safety bears the burden of proving by a preponderance of the evidence that a driver consented to chemical testing. *Johnson v. Commissioner of Pub. Safety*, 392 N.W.2d 359, 362 (Minn. App. 1986).

A person's consent to a search is valid if the consent is freely and voluntarily given. *State v. George*, 557 N.W.2d 575, 579 (Minn. 1997). In *Brooks*, the supreme court held that "[w]hether consent is voluntary is determined by examining the totality of the circumstances." 838 N.W.2d at 568 (quotation omitted). The relevant circumstances include "'the nature of the encounter, the kind of person the defendant is, and what was said and how it was said.'" *Id.* at 569 (quoting *State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994)). When considering the nature of the encounter, a court should ask how the police came to suspect the driver was under the influence, whether police read the driver the implied-consent advisory, and whether the driver had an opportunity to consult with an attorney. *Id.* The supreme court identified three primary reasons why Brooks's consent was voluntary and not coerced. First, Brooks was read the implied-consent advisory, which "made clear to him that he had a choice of whether to submit to testing." *Id.* at 572. The supreme court reasoned that "[w]hile an individual does not necessarily need to know he or she has a right to refuse a search for consent to be voluntary, the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* Second, Brooks had "the ability to consult with counsel," which the supreme court reasoned supports the conclusion that a defendant

made a voluntary decision. *Id.* Third, Brooks "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571 (citing *State v. High*, 287 Minn. 24, 27-28, 176 N.W.2d 637, 639 (1970)). The supreme court reasoned that "nothing in the record suggests that Brooks was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *Id.* (quotation marks omitted).

In this case, the totality of the circumstances indicates that Wright's consent to chemical testing was voluntary. First, like the appellant in *Brooks*, Wright was read the implied-consent advisory, which "made clear to him that he had a choice of whether to submit to testing." *See id.* at 572. Second, Wright had the opportunity to consult with counsel and actually did so, both by telephone and in person, and his face-to-face consultation occurred immediately before he provided a urine sample. *See id.* Third, like the appellant in *Brooks*, Wright "was neither confronted with repeated police questioning nor was he asked to consent after having spent days in custody." *Id.* at 571. In short, "nothing in the record suggests that [Wright] was coerced in the sense that his will had been overborne and his capacity for self-determination critically impaired." *See id.* (quotation marks omitted). Rather, the record indicates that the officers accommodated every request he made to them. Furthermore, his attorney was present at the jail before Wright provided a urine sample, which makes it much less likely that Wright would have been subjected to overbearing law-enforcement tactics. All of these circumstances support the district court's finding that Wright "freely and voluntarily consented to alcohol concentration testing after a valid reading of the Advisory."

5

Wright contends that his consent is invalid because Officer Pinoniemi did not read the implied-consent advisory a second time before requesting a urine test. Wright's contention is inconsistent with the caselaw. This court has held that "a police officer is not required to reread the entire implied-consent advisory when an alternative test is necessary" after a driver is unable to complete the initially-offered test due to a malfunction or physical inability. *State v. Fortman*, 493 N.W.2d 599, 601 (Minn. App. 1992) (citing *Hansen v. Commissioner of Pub. Safety*, 393 N.W.2d 702, 705 (Minn. App. 1986)). Accordingly, Officer Pinoniemi's reading of the implied-consent advisory before Wright's consent to a breath test is sufficient for purposes of the implied-consent statute. Furthermore, Wright was allowed to consult with an attorney after being asked to submit to a urine test, and he provided a urine sample while his attorney was at the jail. It appears that Wright was allowed to exercise his limited right to counsel in a manner that goes beyond the minimum requirements. *See Nelson v. Commissioner of Pub. Safety*, 779 N.W.2d 571, 574 (Minn. App. 2010) (concluding that police were not required to allow suspect to consult with attorney after being asked to provide second blood sample). Thus, the absence of a second reading of the implied-consent advisory does not invalidate Wright's consent.

Wright further contends that the district court's finding of valid consent is erroneous because there is no evidence that he *verbally* expressed his consent to a urine test (as opposed to a breath test) before the urine test was performed. Wright is correct insofar as he describes the testimony at the implied-consent hearing. But the absence of verbal consent does not mean that the district court erred by finding that Wright

6

consented to a urine test. Consent to a warrantless search need not be express or verbal; consent may be implied from a person's conduct. *See State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The "critical fact" in determining whether a person has consented to a warrantless search of a residence is whether the person provided some "manifestation of consent, either verbally or by welcoming actions." *Id.* at 223; *see also State v. Ulm*, 326 N.W.2d 159, 162 (Minn. 1982). In this case, the evidentiary record does not reveal any oral communication between Officer Pinoniemi and Wright after Wright's meeting with his attorney in the conference room. The record reveals that Wright provided a urine sample, apparently without incident. Officer Pinoniemi testified that there was nothing unusual in the collection of the urine sample; he described it as "pretty standard." There is no evidence that Wright resisted or openly questioned a urine test in any way. Considered as a whole, the record reveals that Wright expressly consented to a breath test, asked to speak with an attorney after being asked to submit to a urine test, actually consulted with an attorney, and then provided a urine sample. In the absence of any contrary evidence, these facts are sufficient to support the district court's finding that Wright provided valid consent to a urine test.

Wright last contends that the revocation of his driver's license is invalid because the implied-consent statute required him to relinquish his constitutional right to be free from unreasonable searches. Wright appears to argue that the implied-consent statute violates the unconstitutional-conditions doctrine by imposing a civil penalty on an individual who is arrested for DWI and refuses to submit to chemical testing. This court rejected such an argument in *Stevens v. Commissioner of Pub. Safety*, 850 N.W.2d 717

(Minn. App. 2014), in which the appellant challenged the revocation of her driver's license following her refusal to submit to a breath test. *Id.* at 721. We concluded that the unconstitutional-conditions doctrine did not invalidate the license-revocation provision of the implied-consent statute. *Id.* at 724-31. Unlike the appellant in *Stevens*, Wright did not refuse chemical testing. Wright does not explain why the unconstitutional-conditions doctrine should apply or how this court could reach a conclusion other than the conclusion in *Stevens*. He consented to a urine test, and we have concluded that his consent is valid. Thus, we reject his unconstitutional-conditions argument.

In sum, the district court did not err by concluding that Wright provided valid consent to the urine test and by denying Wright's petition to rescind the revocation of his driver's license.

**Affirmed.**