STATE OF MINNESOTA

IN SUPREME COURT

A22-1238

Court of Appeals                                                          Thissen, J.

Brian Matthew Nash,

           Respondent,

vs.                                                                       Filed: April 10, 2024
                                                                          Office of Appellate Courts
Commissioner of Public Safety,

           Appellant.

_____

Rodd Tschida, Minneapolis, Minnesota, for respondent.

Keith Ellison, Attorney General, Nicholas Moen, Ryan Pesch, Assistant Attorneys General, Saint Paul, Minnesota, for appellant.

William A. Lemons, Minnesota County Attorneys Association, Saint Paul, Minnesota, for amicus curiae Minnesota County Attorneys Association.

Barry S. Edwards, Keller Law Offices, Minneapolis, Minnesota, for amicus curiae Minnesota Society for Criminal Justice.

_____

S Y L L A B U S

A state trooper's statements that "refusal to take a test is a crime" complied with the advisory required by Minn. Stat. § 171.177, subd. 1 (2022).

Reversed and remanded.

1

THISSEN, Justice.

This case is about what information peace officers must convey to a person suspected of driving while impaired under the advisory for chemical tests that require a search warrant under Minn. Stat. § 171.177, subd. 1 (2022). On July 28, 2019, a state trooper pulled over respondent Brian Matthew Nash ("Nash") for suspected driving while impaired. After Nash failed field sobriety tests, he was arrested for driving while impaired. The trooper obtained a search warrant to conduct a blood or urine test. She showed Nash the warrant and stated that she had applied for a warrant for a blood test and "refusal to take a test is a crime." Nash submitted to the blood test and, based on the results, his driver's license was subsequently revoked. We now address whether the trooper's statement to Nash complied with the statutory requirement that, before the test is administered, the driver "must be informed that refusal to submit to a blood or urine test is a crime." Minn. Stat. § 171.177, subd. 1.

## FACTS

The relevant facts are not in dispute. On July 28, 2019, at approximately 1:30 a.m., a state trooper stopped Nash's vehicle and observed indicators that he was impaired by a controlled substance. After the trooper administered field sobriety tests and arrested Nash for driving while impaired, she obtained a search warrant authorizing her to obtain a sample of Nash's blood or urine.

The trooper showed the warrant to Nash but did not hand it to him or otherwise offer to let him review it. She made no reference to the fact that the warrant was for either a

blood sample or a urine sample. She stated that she had applied for a warrant for a blood test and "refusal to take a test is a crime."

After Nash complied without objection, his blood test revealed the presence of methadone, a controlled substance for which he had a valid prescription. Nash's driving privileges were administratively revoked as a result. Nash testified that he agreed to the blood test because he was scared and did not want to commit an additional crime. Nothing in the record suggests that Nash was averse to taking a blood test, that he would have refused a urine test if offered as an alternative, or that the urine test would not have revealed the presence of methadone.

By petition dated November 18, 2019, Nash sought judicial review of his license revocation. A hearing was held on May 31, 2022. Nash raised several issues at the hearing, including whether the trooper's statements at the time of Nash's arrest complied with the advisory provision set forth in section 171.177, subdivision 1.[1] The district court rejected all of Nash's arguments and sustained the revocation of his driving privileges. Nash raised the same arguments on appeal.

The court of appeals reversed. *Nash v. Comm'r of Pub. Safety*, 989 N.W.2d 705 (Minn. App. 2023). The court of appeals considered only whether the advisory given to Nash complied with the language of section 171.177, subdivision 1. *Id.* at 707. The court

---

[1] In addition to his argument that the advisory he was given was inappropriate, Nash argued before the district court that the trooper lacked probable cause to arrest Nash, that the advisory the trooper gave him violated his due process rights, that the test results were not reliable and accurate, and that the prescription-drug affirmative defense set forth in Minn. Stat. § 171.177, subd. 12(h) (2022), applied.

of appeals held that "the advisory informed Nash that he could be charged with a crime if he refused the blood test, even though the trooper had not offered Nash an alternative urine test. That was an inaccurate statement of law and misleading." *Id.* at 710. Because the court of appeals concluded that its resolution of the meaning of section 171.177, subdivision 1, was dispositive, it did not consider the remaining issues Nash raised on appeal. *Id.* at 707.[2] We granted review.

## ANALYSIS

The facts relevant to this case are not in dispute. The application of a statute to undisputed facts is a legal question that we review de novo. *AIM Dev. (USA), LLC v. City of Sartell*, 946 N.W.2d 330, 335 (Minn. 2020); *see also State v. Anderson*, 941 N.W.2d 724, 727 (Minn. 2020).

### A.

Minnesota Statutes section 169A.20, subdivision 2 (2022), makes it a crime to "refuse to submit to a chemical test . . . of the person's blood or urine as required by a search warrant under sections 171.177 and 626.04 to 626.18."[3] Minnesota Statutes

---

[2] Because the court of appeals did not reach any of the issues Nash raised aside from the meaning of the search-warrant advisory statute, we do not reach and express no opinion on the district court's resolution of those issues. *See In re Tr. of Lawrence B. Schwagerl Tr. Under Agreement Dated Apr. 9, 1999*, 965 N.W.2d 772, 785 (Minn. 2021) (declining to decide issues not first addressed by the court of appeals and remanding to that court for consideration); *State v. Glidden*, 455 N.W.2d 744, 745 (Minn. 1990) (same).

[3] Minnesota Statutes sections 626.04–.18 (2022) set forth the general requirements for the issuance and execution of search warrants.

4

section 171.177 (2022) sets forth the process for conducting—pursuant to a search warrant—a blood or urine test of a person suspected of driving while impaired.

This dispute centers on the language of the advisory in section 171.177, subdivision 1, which provides that "[a]t the time *a blood or urine test* is directed pursuant to a search warrant under sections 626.04 to 626.18, *the person must be informed that refusal to submit to a blood or urine test is a crime*." (Emphasis added.)

In arguing for differing interpretations of subdivision 1, the parties also cite to subdivision 2, which states:

> The peace officer who directs a test pursuant to a search warrant shall direct a blood or urine test as provided in the warrant. If the warrant authorizes either a blood or urine test, the officer may direct whether the test is of blood or urine. If the person to whom the test is directed objects to the test, the officer shall offer the person an alternative test of either blood or urine. Action may be taken against a person who refuses to take a blood test only if a urine test was offered and action may be taken against a person who refuses to take a urine test only if a blood test was offered.

Minn. Stat. § 171.177, subd. 2. In other words, subdivision 2 tells us that when a warrant authorizes either a blood or urine test (as in this case), the officer has discretion to decide which test to use. But subdivision 2 also says that if the person refuses the type of test the officer initially offers (blood or urine), action may not be taken against the person for test refusal unless the person is also offered and refuses to take the other type of test.[4]

---

[4] In his initial brief to us, the Commissioner also pointed to Minn. Stat § 171.177, subd. 12(b)(7), to support the conclusion that an officer need not mention multiple types of tests. Subdivision 12(b) sets forth the issues that can be raised at an implied-consent hearing. Subdivision 12(b)(7) allows a person to challenge their license revocation if they raise the issue: "[a]t the time of directing the person to take the test, did the peace officer inform the person that refusing *the test* was a crime as required by subdivision 1?" (Emphasis added.) Nash briefly responded to this argument in his response brief.

5

B.

"The aim of statutory analysis is to 'effectuate the intent of the legislature.' " *State v. Pakhnyuk*, 926 N.W.2d 914, 920 (Minn. 2019) (quoting *State v. Riggs*, 865 N.W.2d 679, 682 (Minn. 2015)). "The first step in statutory interpretation is to determine whether the statute's language is ambiguous." *State v. Fugalli*, 967 N.W.2d 74, 77 (Minn. 2021). "The language of a statute is unambiguous when there is only one reasonable way to read the text." *Id.*[5]

---

Following oral argument, Nash submitted a letter citing supplemental authority—Minn. Stat. § 645.08(2) (2022) (providing that when interpreting statutes, the singular includes the plural and the plural includes the singular)—to offer an additional reason that we should conclude that subdivision 12 does not plainly support the Commissioner's position. In other words, the use of the singular "test" in subdivision 12 does not compel the conclusion that the officer need only advise the driver that refusal to take a test is a crime. Of course, subdivision 12 (which says "the test") also does not compel the conclusion that the officer must advise the driver that refusal to take multiple tests is a crime. Subdivision 12 is not decisive to understanding the meaning of subdivision 1. And subdivision 12 is not inconsistent with our resolution of this case.

[5]    The court of appeals reasoned that "the advisory requirement in Minn. Stat. § 171.177, subd. 1, is unambiguous" because the statute was held to be unambiguous in another dispute before that court. *Nash*, 989 N.W.2d at 708 (citing *State v. Mike*, 919 N.W.2d 103, 110 (Minn. App. 2018)). But it is not necessarily true that a previous determination that language is unambiguous is always dispositive in a different case involving different facts. Whether a statute is ambiguous depends on the circumstances in a particular case and the specific challenge to the statute. Thus, "no vehicles in the park" seems unambiguous until one considers challenging examples like bicycles (or today, e-bikes) or a tank included in a memorial to service members. *See* H.L.A. Hart, *Positivism and the Separation of Law and Morals*, 71 Harv. L. Rev. 593, 607 (1958). And everyone knows what "sandwich" means until someone suggests it includes a burrito. *See White City Shopping Ctr., LP v. PR Rests., LLC*, No. 2006196313, 2006 WL 3292641, at *3 & n.3 (Mass. Dist. Ct. Oct. 31, 2006) (concluding that a burrito is not a sandwich, after noting that both parties submitted expert affidavits on the question). We do not assume, at the outset, that Minn. Stat § 171.177, subd. 1, is unambiguous as applied in the context of this case.

We start with the language of the search-warrant advisory provision. Once again, section 171.177, subdivision 1, provides: "At the time a blood or urine test is directed pursuant to a search warrant under sections 626.04 to 626.18, the person must be informed that refusal to submit to a blood or urine test is a crime."

An officer satisfies the language of the statute if she informs a driver that "refusal to submit to a blood or urine test is a crime" using the exact words set forth by the Legislature. Indeed, the best practice is for officers to read verbatim the advisory language as set forth in the statute. *See McCormick v. Comm'r of Pub. Safety*, 945 N.W.2d 55, 60 (Minn. App. 2020) (recommending that "police officers read the exact words of the statute in order to avoid any possibility of confusion or improper deviation" (quoting *Hallock v. Comm'r of Pub. Safety*, 372 N.W.2d 82, 83 (Minn. App. 1985)) (internal quotation marks omitted)). But we have never held that the section 171.177 advisory must be recited verbatim and no party to this case contends that an exact recitation is required.

One reasonable interpretation of section 171.177, subdivision 1, is that it requires the driver to be informed that refusal to take "a test" (without mentioning blood or urine) is a crime. Under this reading, "blood or urine test" is a phrase describing a singular thing: a test used to determine if a person is under the influence of an intoxicating substance. This interpretation is reasonable because a blood test and a urine test are the only tests covered by section 171.177. Subdivision 1 starts with the phrase "[a]t the time a blood or urine test is directed." Thus, saying "a blood or urine test" in the context of section 171.177 is the same as saying "a test." Stated more simply, in the context of subdivision 1 (a single-sentence provision), telling a driver that "refusal to submit to a test

7

is a crime" is the same as saying "refusal to submit to a blood or urine test is a crime."[6]

Accordingly, a straightforward reading that section 171.177, subdivision 1, generally required that Nash be informed that "refusal to take a test is a crime" is reasonable.

---

[6]     Section 171.177 was enacted in 2017 following the United States Supreme Court's 2016 decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016). Act of May 23, 2017, ch. 83, art. 2, § 10, 2017 Minn. Laws 351, 360–66. In *Birchfield*, the U.S. Supreme Court held that the Fourth Amendment permits warrantless breath tests—but not warrantless blood tests—incident to arrests for drunk driving. 579 U.S. at 476. We subsequently decided that Minnesota's test refusal statutes were unconstitutional to the extent that they criminalized warrantless blood and urine test refusals. *State v. Thompson*, 886 N.W.2d 224, 234 (Minn. 2016); *State v. Trahan*, 886 N.W.2d 216, 224 (Minn. 2016).

Before the 2017 change, Minnesota Statutes required that an officer seeking to administer any chemical test—breath, blood, or urine—advise the driver as follows:

> [A]t the time a test is requested, the person must be informed:
> (1) that Minnesota law requires the person to take a test:
> (i) to determine if the person is under the influence of alcohol, controlled substances, or hazardous substances;
> (ii) to determine the presence of a controlled substance listed in Schedule I or II or metabolite, other than marijuana or tetrahydrocannabinols; and
> (iii) if the motor vehicle was a commercial motor vehicle, to determine the presence of alcohol;
> *(2) that refusal to take a test is a crime; [and]*
> . . . .
> (4) that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

Minn. Stat. § 169A.51, subd. 2(a) (2016) (emphasis added). The 2017 legislation separated the rules governing breath tests and blood and urine tests, including the rules related to the implied-consent advisory. Not only was section 171.177, subdivision 1, added, but the Legislature also amended Minn. Stat. § 169A.51, subdivision 2(a), as follows:

> ~~Implied consent~~ *Breath Test* **advisory.**
> ~~(a) Subject to paragraph (b),~~ At the time a *breath* test is requested, the person must be informed:
> (1) that Minnesota law requires the person to take a test:
> (i) to determine if the person is under the influence of alcohol~~, controlled substances, or hazardous substances~~; and
> (ii) ~~to determine the presence of a controlled substance listed in Schedule I or II or metabolite, other than marijuana or tetrahydrocannabinols; and~~

8

Nash objects to that interpretation, contending that section 171.177, subdivision 1, requires much more. He argues that the statute mandates that an officer inform a driver that a person can refuse a blood test or a urine test and it is a crime if and only if the person refuses both types of test. This interpretation of subdivision 1 would require law enforcement to inform drivers of the substance of section 171.177, subdivision 2, which provides that "[a]ction may be taken against a person who refuses to take a blood test only if a urine test was offered and action may be taken against a person who refuses to take a urine test only if a blood test was offered." Minn. Stat. § 171.177, subd. 2. Under subdivision 2, if a driver is offered a blood test and refuses the blood test, the driver cannot be convicted of test refusal unless the person also is offered a urine test and refuses the urine test. (The reverse if also true—if a driver is first offered and refuses a urine test, the

---

<del>(iii)</del> if the motor vehicle was a commercial motor vehicle, to determine the presence of alcohol;
(2) that refusal to <del>take</del> *submit to* a *breath* test is a crime; and
. . . .
<del>(4)</del> that the person has the right to consult with an attorney, but that this right is limited to the extent that it cannot unreasonably delay administration of the test.

Act of May 23, 2017, ch. 83, art. 2, § 3, 2017 Minn. Laws 351, 355 (codified at Minn. Stat. § 169A.51, subd. 2 (2022)) (italics added).

In short, before 2017, drivers had to be informed that refusal to take a test is a crime without specifying the type of test. In 2017, to accommodate the new constitutional warrant requirements, the Legislature placed the implied-consent advisories in separate statutes—one for breath tests and one for blood or urine tests. The fact that descriptive terms ("breath" and "blood or urine") were added during this statutory separation process does not show that the Legislature intended the advisory to communicate anything other than what the previous advisory was intended to communicate—that "refusal to take a test is a crime." Minn. Stat. § 169A.51, subd. 2(a)(2) (2016).

9

driver also must be offered and refuse a blood test before the driver can be convicted of test refusal.)

We conclude that Nash's interpretation is not reasonable. First, as stated above, one thing that is clear is that if an officer recites the advisory language exactly as set forth in section 171.177, subdivision 1—"refusal to submit to a blood or urine test is a crime"—the officer complies with the statute. Yet, if the officer did just that, the officer would not be conveying all that Nash contends must be conveyed; Nash maintains that the officer must communicate that it is only a crime if the driver refuses both a blood and a urine test.[7] It is unreasonable to believe that the Legislature intended the officer to communicate something that the officer would not be communicating if she recited the precise advisory language used by the Legislature.

Indeed, if the Legislature had intended the statute to mean what Nash suggests, "the Legislature would have taken a much more direct path to do so." *Buzzell v. Walz*, 974 N.W.2d 256, 265 (Minn. 2022); *see Fugalli*, 967 N.W.2d at 78–79. The Legislature

---

[7] A variation of Nash's argument is that the text of section 171.177, subdivision 1, requires that the police inform a driver that "refusal to submit to a blood test *and* urine test is a crime." *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (observing that "it is the responsibility of appellate courts to decide cases in accordance with law" even if the parties fail to raise an argument). As an initial matter, this seems unreasonable on its face since the reading replaces the word "or" used by the Legislature with "and." We generally treat "or" as disjunctive and "and" as conjunctive. *State v. Loge*, 608 N.W.2d 152, 155 (Minn. 2000); *Aberle v. Faribault Fire Dep't Relief Ass'n*, 41 N.W.2d 813, 817 (Minn. 1950) (stating that "[t]he word 'or' is a disjunctive and ordinarily refers to different things as alternatives"). More importantly, as explained in the remainder of the opinion, other text in the statute—notably section 171.177, subdivision 2, which provides that it is the officer who has discretion over which test to use—renders Nash's interpretation incomplete and unreasonable.

10

plainly understood the rule set forth in subdivision 2—the Legislature enacted the language at the same time it enacted subdivision 1. Act of May 23, 2017, ch. 83, art. 2, § 10, 2017 Minn. Laws 351, 360. The Legislature could have adopted Nash's interpretation of subdivision 1 by referencing subdivision 2 (i.e., "the person must be informed of the requirements to be charged with test refusal under subdivision 2"). Or the Legislature could have provided that "refusal to submit *either* to a blood test or a urine test is *not* a crime, but it is a crime to refuse both of the tests." Or the Legislature could have copied the language of subdivision 2 into subdivision 1:

> [The person must be informed that: 1] the officer may direct whether the test is of blood or urine. [2] If the person to whom the test is directed objects to the test, the officer shall offer the person an alternative test of either blood or urine. [3] Action may be taken against a person who refuses to take a blood test only if a urine test was offered and [4] action may be taken against a person who refuses to take a urine test only if a blood test was offered.

But the Legislature did none of those things. Instead, it simply provided that a driver must be informed "that refusal to submit to a blood or urine test is a crime." Minn. Stat. § 171.177, subd. 1. Nash's interpretation "works too hard and unduly strains the ordinary meaning of the language adopted by the Legislature." *Fugalli*, 967 N.W.2d at 78.

In addition, we conclude that other textual signals tell us that Nash's reading is unreasonable. It is true that section 171.177, subdivision 2, provides in part that action may be taken against a driver only after the driver has rejected both a blood and a urine test. But the same subdivision also expressly states that the choice of test (blood or urine) is *the officer's* prerogative: "[i]f the warrant authorizes either a blood or urine test, the officer may direct whether the test is of blood or urine. If the person to whom the test is

11

directed objects to the test, the officer shall offer the person an alternative test of either blood or urine." Minn. Stat. § 171.177, subd. 2.[8] In other words, the choice of the test belongs to the officer unless the person objects. The statute does contemplate offering the alternative test to the driver, but *only if the person objects to the first test offered*. Nash's interpretation—that the officer must advise, at the outset, that the person can refuse the

---

[8] Although not essential to our conclusion, we observe that this language was a specific choice of the Legislature. In 1985, the implied-consent statute provided that an officer could direct either a breath test or a fluid (i.e., blood or urine) test. If the officer directed a fluid test, the driver could choose which type of fluid test to take. *See* Minn. Stat. § 169.123, subd. 2(c) (1986). In *Haugen v. Commissioner of Public Safety*, the court of appeals—reading the statute quite logically—held that directing only a blood test when the statute required a choice of testing violated the intent of the Legislature. 389 N.W.2d 222, 223–24 (Minn. App. 1986). In response, the Legislature immediately amended the statute to remove the requirement that drivers be provided a choice of fluid test. Act of May 26, 1987, ch. 225, §§ 1–2, 1987 Minn. Laws 532, 533 (codified at Minn. Stat. § 169.123, subd. 2(c) (1987)); *see also Workman v. Comm'r of Pub. Safety*, 477 N.W.2d 539, 540 (Minn. App. 1991) ("[T]he legislature amended the statute to remove the [choice of test] requirement. When respondent was offered and agreed to take a blood test, the trooper was not required to give him the choice of an alternative test under the current version of the statute.").

When the statutes were amended in 2017, the Legislature expressly rejected language that would have presented the choice of test to the driver. When the legislation was being debated, the bill at one point stated that "[i]f the warrant authorizes either a blood or urine test, the officer may direct whether the test is of blood or urine. In any event, the officer shall offer the person an alternative test of either blood or urine." Hearing on S.F. 2375, S. Comm. Judiciary and Pub. Safety Fin. and Pol'y, 90th Minn. Leg., May 12, 2017 (A-3 Amendment). The bill was amended to the current "[i]f the person to whom the test is directed objects" language. *Id.* (A-16 Amendment). Counsel for the Minnesota Senate stated to the Judiciary Committee that the earlier language was "a little ambiguous and it's subject to being read that in any event, the peace officer would have to give a person an alternative test option. But really, the intent was only to authorize that if the person is actually objecting to the original test being directed." *Id.* (audio tape) (statement of Ken Backhus).

first test offered—would effectively give the choice of test to the driver, in direct contradiction of subdivision 2.[9]

Nash concedes that the initial choice of test belongs to the officer. Nonetheless, he argues that although the officer is not required to give the driver the option to choose between tests, the officer is nonetheless required to explain to the driver "what future behavior on their part will constitute the criminal act of refusal." But this is an unreasonable distinction. There is no way to explain the options to the driver without giving that choice to the driver, thereby undermining the Legislature's directive that the officer have the authority to direct which type of test will be taken.

Further, section 171.177, subdivision 1, does not criminalize any acts; it merely sets forth what information the police must provide to a driver concerning an act that is criminalized in other parts of the statute. The crime about which a driver must be informed is refusal to submit to a chemical test, Minn. Stat. § 169A.20, subd. 2. The Legislature

---

[9]     It is useful context to understanding the current statutory language that similar language pre-dated the 2017 amendments to the chemical testing laws. In 2016, the implied consent law provided:

> The peace officer who requires a test pursuant to this section may direct whether the test is of blood, breath, or urine. Action may be taken against a person who refuses to take a blood test only if an alternative test was offered and action may be taken against a person who refuses to take a urine test only if an alternative test was offered.

Minn. Stat. § 169A.51, subd. 3 (2016). As described in footnote 6, *supra*, the statute at this time provided that a driver be advised that "refusal to take a test is a crime." *Id.*, subd. 2(a)(2) (2016). In other words, the advisory required only that the driver be notified that refusal to take *a test* is a crime even though (as in section 171.177, subdivision 2, today) action could not be taken against the driver who refuses a blood test or a urine test unless an alternative test was also offered and refused by the driver. Before the 2017 amendments then, the Legislature chose to require that a driver know generally that test refusal is a crime without requiring the officer to get into the procedural details.

could choose (1) to require that the officer communicate in detail all the elements and permutations of what is required before the State may take adverse action against the driver or (2) to require that the driver know generally that test refusal is a crime without requiring the officer to get into the procedural details.[10]  We conclude that the only reasonable reading of section 171.177, subdivision 1, is that the Legislature intended the latter.

In sum, Nash's alternative reading of section 171.177, subdivision 1, is unreasonable because it is inconsistent with the process the Legislature set forth in subdivision 2 of the same statute.  Accordingly, we conclude that the statement that "refusal to take a test is a crime" satisfies the advisory required by section 171.177, subdivision 1.

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals that the advisory the trooper gave to Nash did not satisfy section 171.177, subdivision 1.  We remand to the court of appeals to consider the other issues that Nash raised in his appeal.

Reversed and remanded.

---

[10]  The trooper also told Nash that she had applied for a warrant for a blood test at the time that she informed Nash that refusal to take a test was a crime.  That does not change our conclusion in this case.  The advisory plainly informed him of everything the Legislature intended in section 171.177, subdivision 1; he generally understood that test refusal is a crime.